# In the United States Court of Federal Claims

No. 24-199

Filed: January 23, 2026

---

PATRICK SNEE, et al.,

                *Plaintiffs*,

v.

THE UNITED STATES,

                *Defendant.*

---

*Steven M. Wald*, with *Michael J. Smith*, *Thomas S. Stewart*, and *Reed W. Ripley*, Stewart, Wald & Smith, LLC, St. Louis, MO, for Plaintiffs.

*Emily A. Davis*, Environment and Natural Resources Division, Natural Resources Section, with *Adam R.F. Gustafson*, Acting Assistant Attorney General, U.S. Department of Justice, Washington, D.C., for Defendant.

## MEMORANDUM OPINION AND ORDER[1]

**TAPP, Judge**

      Plaintiffs seek just compensation for the United States' uncompensated taking related to their New York properties. They now move for partial summary judgment as to liability. (Pls.' Mot., ECF No. 43).[2] Plaintiffs ask this Court to find that the: (1) source conveyances granted easements to the railroad under New York law; (2) recreational trail use exceeds the scope of those easements; (3) Plaintiffs regained fee simple ownership of the land underlying the railroad corridor based on their adjacency to the rail line; and (4) the issuance of the Notice of Interim Trail Use ("NITU") effected a taking. (*Id.*). The United States objects in part and cross-moves for partial summary judgment. (Def.'s Mot., ECF No. 45). The United States argues that the Plaintiffs cannot show: (1) that they have an ownership interest in the rail corridor; (2) causation or just compensation for several Plaintiffs, due to the existence of the Maybrook Trail; and (3) that the Railroad would have abandoned the rail line absent the NITU. (*Id.*).

---

[1] This Opinion is substantively identical to the Court's analysis in an indirectly related action, *Zanzarella v. United States*, ___ Fed. Cl. ___, 2025 WL 3628241, at *2 (Fed. Cl. Dec. 15, 2025) ("*Zanzarella*").

[2] This Motion is filed on behalf of 93 landowners who own 104 parcels of land as a collective. (Pls.' Mot. at 1, ECF No. 43).

The Court finds that Plaintiffs' source documents conveyed easements to the railroad. The Court also finds that while the pre-existing recreational trail does not affect causation, it may nevertheless impact just compensation—an issue overlooked by the Plaintiffs. To that end, the United States has taken a portion of Plaintiffs' property for public use, but several claims have failed to demonstrate an interest in the land underlying the rail corridor. Therefore, summary judgment is **GRANTED-IN-PART** and **DENIED-IN-PART**.

## I.    Background

This rails-to-trails case concerns a 41.1-mile section of rail line running from the Connecticut/New York State Line (Milepost 71.2) to Beacon, New York (Milepost 0.0) across Dutchess and Putnam Counties (the "Line"). (Compl. ¶ 3, ECF No. 1; Pls.' Mot. at 1).



(Pls.' Mot., Ex. 2 at 7, ECF No. 43-2). The Line was previously owned by the Maybrook Railroad Company, which in 1992 acquired 157 miles of railroad that included this segment. (*See* Pls.' Mot., Ex. 9 ("*Danbury Terminal R.R. Co. and Maybrook Properties, Inc.-Acquisition and Operation Exemption-Consolidated Rail Corp.*, ICC Docket No. FD 32180 (Sub-No. 1) (served Dec. 29, 1992), *available at* 1992 WL 383337"), ECF No. 43-9). In 1995, ownership of the Line transferred to the Metro-North Commuter Railroad Company ("MNR"). (Pls.' Mot. at 5 (citing Pls.' Ex. 11, ECF No. 43-11)).

Under the Trails Act, a railroad may initiate abandonment proceedings of a rail line before the Surface Transportation Board ("STB"). 49 U.S.C. § 10903; *see* 16 U.S.C. § 10502. It is not uncommon for a railroad to abandon all or some portion of its line. The Trails Act permits intervention by qualified private organizations or public agencies to railbank the corridor before abandonment is consummated by agreeing to serve as a trail operator in the interim. 16 U.S.C. § 1247(d). The railbanking intervention process enables a railroad to negotiate with the intervening entity, which then assumes financial and managerial responsibility for the corridor by operating it as a recreational trail. 28 A.L.R. Fed. 3d Art. 6 (citing *Preseault v. ICC*, 494 U.S. 1, 6–7, (1990) ("*Preseault I*")). To allow for this process, the STB may issue a NITU. 49 C.F.R. § 1152.29. If the railroad and trail sponsor agree, then the parties notify the STB, the corridor is railbanked, the STB retains jurisdiction, and "interim trail use is thereby authorized." *Preseault I*, 494 U.S. at 7 n.5 (1990); *see also* 16 U.S.C. § 1247(d); 49 C.F.R. § 1152.29(h). If an agreement is not reached, the railroad may exercise its STB-granted authority to abandon the line. 49 C.F.R. § 1152.29(d)(1), (e)(2); *see Citizens Against Rails-to-Trails v. STB*, 267 F.3d 1144, 1150–53 (D.C. Cir. 2001).

In December 2023, MNR filed a Verified Notice of Exemption of Abandonment ("Abandonment Application") with the STB. (Pls.' Mot., Ex. 22, ECF No. 43-22). MNR also formally requested a NITU with MNR as the trail sponsor, (*id.*, Ex. 2), which the STB issued on February 8, 2024, (*id.*, Ex. 3, ECF No. 43-3). Per the NITU, MNR was required to notify the STB of a trail use agreement prior to its expiration on February 8, 2025. (*Id.*, Ex. 3 at 3). MNR filed for and was granted an Extension of the Interim Trail Use Negotiation period, which is now set to expire on February 8, 2026. (*Id.*, Ex. 190, ECF No. 43-190).

## II.    Analysis

### A.    Standard of Review

Each party moves for summary judgment. The Court may "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Facts are material if they "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine factual dispute exists when "the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Id.*

While "inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion[,]" *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962), summary judgment may still be granted when the party opposing the motion submits evidence that "is merely colorable . . . or is not significantly probative." *Anderson*, 477 U.S. at 249–50 (internal citations omitted). However, the moving party "need not produce evidence showing the absence of a genuine issue of material fact but rather may discharge its burden by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Dairyland Power Co-op. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (citing *Celotex Corp.*, 477 U.S. at 325). Courts may only grant summary judgment when "the record taken as a

whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita, Elec. Indus. Co., Ltd. v. United States*, 475 U.S. 574, 587 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). A trial court is permitted, in its discretion, to deny even a well-supported motion for summary judgment if the case would benefit from a full hearing. *Lowery v. United States*, 167 Fed. Cl. 28, 37 (2023) (citing *United States v. Certain Real & Pers. Prop. Belonging to Hayes*, 943 F.2d 1292 (11th Cir. 1991)).

    *B.    Discussion*

    In Trails Act cases, a taking occurs when "government action destroys state-defined property rights[,]" either "by converting a railway easement to a recreational trail, if trail use is outside the scope of the original railway easement[,]" or by compelling the continuation of a railroad-purposes easement to accommodate negotiations for a trail-use agreement, even if the negotiations are ultimately unsuccessful. *Ladd v. United States*, 630 F.3d 1015, 1019, 1025 (Fed. Cir. 2010); *see also Caquelin v. United States*, 959 F.3d 1360, 1367 (Fed. Cir. 2020) ("*Caquelin*"). The determinative issues for takings liability are: (1) whether the railroad acquired full ownership of the land (fee simple) or merely easements; (2) if only easements were acquired, whether those easements were limited to railroad use or also permitted future use as public recreational trails; and (3) whether any such easement permitting recreational trail use expired before the alleged taking, leaving the landowners with full, unencumbered ownership at that time. *Galt Auto. Warehouse, Inc. v. United States*, 179 Fed. Cl. 138, 143 (2025) (citing *Preseault v. ICC*, 100 F.3d 1525, 1550 (Fed. Cir. 1996)); *see also Ellamae Phillips Co. v. United States*, 564 F.3d 1367, 1373 (Fed. Cir. 2009) (outlining the determinative issues for takings liability). Importantly, property rights are determined by the operation of state law. *Castillo v. Diaz*, 952 F.3d 1311, 1319 (Fed. Cir. 2020).

    This analysis becomes more complicated when a trail use agreement has not been reached. The Federal Circuit has held that in cases where no trail use agreement is reached, but the NITU compels the railroad to delay its abandonment, the issuance of a NITU may effect a temporary physical taking. *Ladd*, 630 F.3d at 1023–24. To show causation when no trail use agreement exists, it must be clear that the railroad "had every intent to abandon the railroad lines during the period of time that the NITU was in effect and was prevented from doing so by the existence of the NITU." *Memmer v. United States*, 50 F.4th 136, 145 (Fed. Cir. 2022). To evaluate the railroad's intent, the Court may look to a variety of circumstances, including: the railroad's initiation of abandonment proceedings; its refusal to extend the NITU; the timing of its abandonment relative to the NITU's expiration; the scope of authority granted under the NITU; and whether the railroad undertook physical acts consistent with abandonment, such as removing track infrastructure, et cetera. *See Galt Auto.*, 179 Fed. Cl. at 144 (citing *Sauer West LLC v. United States*, 151 F.4th 1339, 1346 (Fed. Cir. 2025)). These factors are illustrative, not exhaustive. *See Sauer West*, 151 F.4th at 1346.

    Plaintiffs move for summary judgment, requesting the Court find that the condemnations—through which the constructing railroad acquired the Line—conveyed only easements limited to railroad purposes, and recreational trail use exceeds the scope of those easements. (Pls.' Mot. at 12–21). Plaintiffs also contend they have established a property interest in the rail corridor based on New York's centerline presumption. (*Id.* at 17–18). Finally,

Plaintiffs seek summary judgment, asserting that the issuance of a NITU caused a taking. (*Id.* at 18–21).

The United States cross-moves for summary judgment, dividing the Plaintiffs into two separate groups, Groups C and D.[3] (Def.'s Mot. at 1–3). The United States moves for summary judgment for claims premised on the centerline presumption ("Group C") and those adjacent to the "pre-existing Maybrook Trail" ("Group D"). (Def.'s Mot. at 1–2). Finally, the United States claims that none of the Plaintiffs in this matter can demonstrate that MNR would have abandoned the rail line absent the NITU. (*Id.* at 3).

> 1. Under New York law, the Railroad obtained easements limited to railroad purposes, and Trail use is beyond the easement's scope.

Plaintiffs allege that the railroad acquired the Line through condemnations, which necessarily means that the railroad acquired an easement limited to railroad purposes under New York law. (Pls.' Mot. at 12–22). Further still, Plaintiffs assert that the easements acquired are specifically limited to railroad purposes. (*Id.*). In its response, the United States expressly states that it did not contest that "the original railroad acquired an interest in the corridor via condemnation" or that "those condemnation deeds convey[ed] easements for railroad purposes under New York law[.]" (Def.'s Mot. at 12 n.5).

It is well established that condemnations convey easements limited to railroad purposes in the state of New York. (*See* Pls.' Mot., Ex. 4, ECF No. 43-4 (The New York Railroad Act of 1850 ("the GRA"), §§ 14–21, 25–26, 28)). New York courts have consistently held that the GRA[4] does not permit railroads to acquire property in fee pursuant to condemnation. *Crouch v. State*, 218 A.D. 356, 358 (N.Y. App. Div. 1926) ("[T]he general rule is that unless express authority to take a fee is given, the railroad company acquires title only in the nature of an easement.") (citing *Hudson & Manhattan R. R. Co. v. Wendel*, 193 N.Y. 166, 177, 179 (1908)); *Erie Lackawanna Ry. Co. v. State*, 38 A.D.2d 463, 464 (N.Y. App. Div. 1972); *People v. Helinski*, 222 A.D.2d 788, 790 (N.Y. App. Div. 1995) (finding the subject property was acquired

---

[3] The United States notes that these naming conventions are adopted from its Cross-Motion for Partial Summary Judgment on Liability in the indirectly related case *Zanzarella v. United States*, No. 24-239, 2025 WL 3628241 (Fed. Cl. Dec. 15, 2025). (Def.'s Mot. at 1 n.1). In that case, Group C encompassed claims premised on the centerline presumption and Group D encompassed properties adjacent to the Maybrook Trail. *See Zanzarella*, 2025 WL 3628241, at *3.

[4] The GRA, passed by the New York State Legislature, was formally titled "An Act to authorize the formation of railroad corporations, and to regulate the same[,]" passed on April 2, 1850. *See* N.Y. Law ch. 140 (1850); (Pls.' Mot., Ex. 4, ECF No. 43-4). Though they have similar naming conventions, this is not to be confused with the federal General Railroad Right-of-Way Act of 1875, 18 Stat. 482, 43 U.S.C. §§ 934–939. *See Marvin M. Brandt Revocable Trust v. United States*, 572 U.S. 93, 98 (2014) (discussing the congressional passage of the General Railroad Right-of-Way Act).

through condemnation and thus the railroad could only acquire a permanent easement, not title in fee) (citing *O&W Lines, Inc. v. St. John*, 228 N.E.2d 370, 371 (N.Y. 1967)). Because the law in New York is clear, and this issue is undisputed, the Court finds that a railroad's interests in land acquired via condemnation can only amount to an easement limited to railroad purposes and not a fee title. Therefore, Plaintiff's succeed on this claim.

Plaintiffs also argue that recreational trail use exceeds the scope of the railroad's easements. (Pls.' Mot. at 15–17). Again, the United States raised no objections to this claim. (*See* Def.'s Mot.). Because this issue is uncontested, the Court finds that Plaintiffs have successfully shown that trail use exceeds the scope of the railroad's easements.

### 2.    Centerline Presumption

The Court next turns to the parties' dispute regarding the applicability of the "centerline presumption." The "centerline presumption" generally assumes that property owners whose land borders a railroad or road also own the land up to the centerline of that right-of-way, unless state law or the original deed shows otherwise. *Castillo*, 952 F.3d at 1311, 1314, 1320 (citing *Banks v. Ogden*, 69 U.S. 57, 68 (1864)). The presumption is just that—a presumption. It may be rebutted. Under New York law, the presumption is displaced where adequate evidence, including the deed or relevant surrounding circumstances, demonstrates that the original grantor intended to convey no more than the land up to the road's edge. *Marks v. Gaeckle*, 156 N.Y.S.3d 402, 404 (N.Y. App. Div. 2021); *Bashaw v. Clark*, 699 N.Y.S.2d 533, 537 (N.Y. App. Div. 1999). Courts consider various factors, including the deed's language, land layout, and actions of past owners, to determine intent. *DiMarino v. United States*, 179 Fed. Cl. 119, 123 (2025) (citing *Marks*, 156 N.Y.S. at 404), *opinion clarified*, 178 Fed. Cl. 733 (2025). When there is doubt as to intent, it can also be garnered from the practical construction of the grantor and grantee and their successors in title. *Id.* (citing *Lehrman v. Lake Katonah Club, Inc.*, 794 N.Y.S.2d 670 (N.Y. App. Div. 2005)).

Plaintiffs now seek to establish their ownership of the land adjoining and underlying those segments of the corridor where the railroad acquired only an easement for railroad purposes. (Pls.' Mot. at 17–18). If they can prove adjacency, Plaintiffs then aim to assert a property interest in the rail corridor under New York's centerline presumption. (*Id.*). In its response, the United States does not raise arguments contesting whether any of the properties are adjacent to the Line. (*See* Def.'s Mot.). However, the United States challenges the application of the centerline presumption for the Group C Plaintiffs and moves for summary judgment, asserting that Plaintiffs' "deed instruments do not convey an ownership interest to the Plaintiffs in the underlying corridor." (*Id.* at 11–18). The United States further maintains that Plaintiffs rely broadly on the exhibits attached to their Motion without substantively addressing what those exhibits actually show. (*Id.*). Specifically, the United States argues that, based on the "metes and bounds descriptions" and "attached maps/plats of the land," the documents demonstrate an intent of the original grantor "to limit the conveyances to the exterior of the Beacon Line corridor." (*Id.* at 13).

In response, Plaintiffs assert that the United States places too much emphasis on the fact that some of the deeds either describe various properties as running "along" the rail line or identify particular "lot[s.]" (Pls.' Reply at 2–12 ("If the government was correct, then any

delineation of a public way of any type or style for any deed would rebut the presumption before it could ever arise.")). Plaintiffs also argue that a deed's reference to directions, boundaries, or mapped lines does not overcome the centerline presumption under New York law. (*Id.*). Finally, Plaintiffs suggest that unless the United States can provide evidence, "in the form of chain of title or otherwise," which demonstrates that the Plaintiffs sought to retain only a reversionary interest in the rail corridor, then the centerline presumption cannot be rebutted. (*Id.* at 10).

Plaintiffs' arguments imply that the deeds fail to reveal the boundaries their predecessors intended to convey. That is not so. New York courts routinely ascertain such boundaries directly from the deed. *Marks*, 156 N.Y.S.3d at 404 (stating that the subject deed defined the properties boundary as the "'[e]asterly line'—i.e., the outer edge—of the 30-foot private road, supporting the defendant's contention that the deed expressly excluded the disputed strip[.]"); *see also City of Albany v. State*, 270 N.E.2d 705, 707 (N.Y. 1971) ("[W]hen the deed describes the grant as starting at a corner of an intersection, and then running along parallel to or bounding on a street or streets to the beginning point , the grant is limited to the exterior line of the street[.]"). To overcome the centerline presumption, the deed must include language that affirmatively limits the scope of the conveyance. *Town of Clifton Park v. Boni Builders, Inc.*, 156 A.D.3d 1035, 1037 (N.Y. App. Div. 3rd Dept. 2017) (citing *Lamm v. Mauser*, 132 A.D.3d 1120, 1123) (finding that utilization of terms such as "along a curve" and "the point or place of beginning" are "descriptive reference points" but do not indicate an intent to limit the conveyance to the edge of the boundary.); *Town of Lake George v. Landry*, 96. A.D.3d 1220, 1223 (N.Y. App. Div. 3rd Dept. 2012) (finding that a deed expressly limiting the conveyance to the "westerly bounds of a right of way" precluded a determination that the defendant's property extended to the eastern boundary of the adjoining parcel). Therefore, mere reference to metes and bounds, even where those bounds coincide with mapped lines, is insufficient to establish an intent to exclude the adjacent road's exterior.

Accordingly, where the deed lacks clear limiting language, the centerline presumption remains intact; conversely, where such limiting language is present, the presumption is rebutted. Therefore, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** both Plaintiffs' and the United States' motions for partial summary judgment as to the centerline presumption in accordance with the chart below:

| Plaintiff / Parcel No. | Claim No. | Deed Language | Centerline Presumption Ruling |
|---|---|---|---|
| Patrick Snee: 132800-6356-01-462839-0000 | 1 | "Beginning on the northerly line of Fishkill Creek Road at the southwest corner of Ruckman and running thence along the northerly line of said road North 83° 47' West 269.88 feet **to the easterly exterior line of the Dutchess and Columbia Railroad Co.; thence along said line** North 42° 56' East 402.91 feet to a point on said line at the northwest corner of said Ruckman; thence along the westerly line of said Ruckman | Rebutted, does not apply |

| | | | |
|---|---|---|---|
| | | South 1° 06' East 322.51 feet to a point or place of beginning"<br><br>(Pls.' Ex. 25a). | |
| Joseph & Patricia Aiello: 134089-6857-00-452460-0000 | 2 | "All that certain piece or parcel of land lying and situate in the Town of Pawling, County of Dutchess, and State of New York, shown and designated as Lot 2 on a certain map entitled, **"Subdivision Plat prepared for Adams", prepared by Zarecki & Associates, LLC, on file with the Dutchess County Clerk as Filed Map #12441**, being more particularly bounded and described as follows: BEGINNING at a point on the easterly line of N.Y.S. Route 292 at the northwest corner of lands now or formerly Adams and the southwest corner of lands now or formerly Town of Pawling Cemetery; RUNNING THENCE the following nine (9) courses and distances along the Town of Pawling Cemetery; . . .<br><br>RUNNING THENCE along the lands now or formerly of Ballard;<br>• North 46° 10' 35" East, 8.95 feet;<br>• North 87° 16' 20" East, 38.03 feet;<br>• North 83° 54' 45" East, 35.92 feet;<br>• North 87° 40' 11" East, 87.80 feet;<br>• South 85° 35' 45" East, 46.23 feet;<br>• South 83° 32' 47" East, **183.45 feet to a point on the westerly line of Metro-North Commuter Railroad;**<br><br>**THENCE RUNNING southwesterly** on a curve to the right having a radius of 2,242.51 and an arc length of 706.08' (chord, South 18° 41' 09" West, 703.17 feet); . . ."<br><br>(Pls.' Ex. 26a). | Rebutted, does not apply |
| Julius Almenas: III: 13.-2-87 | 3 | "ALL that certain plot, piece or parcel of land, situate, lying and being in Town of Patterson, County of Putnam and State of New York, shown and designated as **Lot No. 42 on a certain map entitled, "Final Subdivision Plat of O'Hare Subdivision Section II", filed in the Putnam County Clerk's Office** | Applies |

| | | | |
|---|---|---|---|
| | | **on September 25, 1992 as Filed Map 2360-B**, also being more particularly bounded and described as follows: BEGINNING at the intersection of Lot 42 and Lot 41, as shown on the above described map, with the southerly side of Fox Hill Terrace; RUNNING THENCE along said division line South 35 degrees 8' 54" West 358.11 feet; THENCE along the division line between Lot 41 and Lots 36 and 37, North 76 degrees 2' 47" West 534.02 feet; **THENCE along the division line between Lot 42 and the lands now or formerly of the New York/New Haven Railroad, the following courses and distances:** North 20 degrees 18' 39" East 45.00 feet; North 14 degrees 27' 42" test 31.23 feet; North 3 degrees 9' East 141.38 feet; North 2 degrees 41' 27" East 80.50 feet; North 1 degree 3' 27" East 30.00 feet; . . ."<br><br>(Pls.' Ex. 27a). | |
| Mario & Evette Alti: 132800-6357-04-927335-0000 | 4 | "ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of East Fishkill, County of Dutchess and State of New York, known as **Lot No. 17 as shown on a map entitled "Shadowbrook Estates, Subdivision Plat for Herbert Stenger", and filed in the Dutchess County Clerk's Office as Map No. 5055** on January 20, 1977, said lot being more particularly bounded and described as follows: BEGINNING at a point on the westerly side of Shadow Lane at the division line between Lot No. 17 and Lot No. 18 on said map; RUNNING thence along said westerly side of Shadow Lane on a curve to the left having a radius of 175.00 feet, a distance of 17.00 feet; THENCE South 15° 30' 00" West 63.11 feet, and along a curve to the left, having a radius of 100.00 feet, a distance of 23.00 feet to the division line between Lot No. 17 and Lot No. 16 on said map; RUNNING thence along said division line South 87° 16' 15" West 355.14 feet to lands now or formerly of the Town of East Fishkill; RUNNING thence along said lands | Applies |

| | | | |
|---|---|---|---|
| | | North 21 ° 48' 18" West 219.88 feet **to lands now or formerly Metro North, formerly Penn Central Railroad; RUNNING thence along said lands North 61 ° 46' 10" East 95.00** feet to the division line between Lot No. 17 and Lot No. 18 on the above mentioned map; . . ." <br><br> (Pls.' Ex. 28a). | |
| Nicola Apap: 134089-6856-00-417666-0000 | 5 | "All that certain plot, piece or parcel of land situate, lying and being in the Town of Pawling, County of Dutchess and State of New York known and designated as **Lot No. 11 on a certain map entitled, "Subdivision Plat of Willow Lake Estates, Town of Pawling, Dutchess County, New York", dated January 26, 1977 and filed in the Dutchess County Clerk's Office on June 30, 1977 as Filed Map #5183**, being more particularly bounded and described as follows: BEGINNING at a point on the westerly boundary line of a proposed public road to be known as Maria Drive . . .; thence from said point of beginning westerly along the said division line between lot 10 & 11, South 68° 00' 00" West 247.40 feet **to the easterly boundary line of lands now or formerly New York, New Haven & Hartford Railroad; thence northerly along the same**, North 18° 30' 30" West 290.54 feet to a point **where said easterly boundary line of lands now or formerly of New York, New Haven and Hartford Railroad is intersected by the division line between lots 11 & 12 a shown on aid Filed Map #5183**; thence easterly along said division line of lots 11 & 12, North 68° 00' 00" East 229.71 feet to the point on the westerly boundary line of the first mentioned Maria Drive; thence southerly along the same, South 22° 00' 00" East 290.00 feet to the point of BEGINNING." <br><br> (Pls.' Ex. 29a). | Rebutted, does not apply |
| Ark of Grace Ministries, Inc.: | 6 | "ALL THOSE CERTAIN PLOTS, pieces, or parcels of land, with the buildings and improvements thereon erected, situate, lying | Rebutted, does not apply |

| | | |
|---|---|---|
| 134089-6857-00-614585-0000 | | and being in the Town of Pawling, County of Dutchess, State of New York, being bounded and described as follows: PARCEL I BEGINNING at a point marked by a concrete monument on the Westerly line of New York State Route 55, said point being the Northwesterly corner of lands now or formerly of Cunningham and the Northeasterly corner of the herein described parcel, . . . , thence running South 37° 42' 00" West 574.55 feet through said Grape Creek, **to a point on the Easterly right-of-way line of lands now or formerly of Conrail; thence running along said lands now or formerly of Conrail, the following courses and distances**: North 09° 42' 00" East 741.20 feet to a point; thence running Northeasterly on a curve to the right having a radius of 1,860.58 feet for an arc length of 578.97 feet; thence running North 27° 31' 30" East 365.30 feet to a point; thence running Northwesterly on a curve to the left having a radius of 2,341.51 feet for an arc length of 875.59 feet to a point; thence running North 06° 06' 00" East 225.00 feet to a point; thence running North 03° 55' 50" West 237 .55 feet to the Southwesterly corner of lands now or formerly of United States of America, formerly Shatz; thence running South 85° 49' 27" East 966.94 feet to the Westerly line of New York State Route 55; . . . ."<br><br>(Pls.' Ex. 30a). | |
| Saundra Armstrong: 132800-6557-03-382137-0000 | 7 | "ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of East Fishkill, County of Dutchess and State of New York, being known and designated as **Lot No. 7 on a certain map entitled, "Subdivision Plan for Walton Realty Inc., Town of East Fishkill, Dutchess County, New York" dated April 22, 1998 and filed in the Office of the County Clerk of Dutchess County on September 21, 1999 as Map No. 10874** being more particularly bounded and described according to said map | Applies |

| | | | |
|---|---|---|---|
| | | as follows: BEGINNING at a point on the easterly side of Falcon Crest Court where the division line between lots 6 and 7 on the aforementioned map intersects said easterly side of Falcon Crest Court; RUNNING THENCE North 50 degrees 55 minutes 09 seconds East 300.46 feet; **THENCE South 80 degrees 29 minutes 00 seconds East, 197.85 feet**; THENCE South 16 degrees 46 minutes 00 seconds West, 110.03 feet; THENCE South 68 degrees 01 minutes 40 seconds West, 304.52 feet; THENCE North 82 degrees 31 minutes 0 seconds West, 101.09 feet to the easterly side of Falcon Crest Court; THENCE northerly on said side of Falcon Crest Court along a curve to the left having a radius of 65.00 feet and an arc length of 52.82 feet to the point and place of BEGINNING." <br><br> (Pls.' Ex. 31a). | |
| Beacon Commercial Realty Properties, LLC: 130200-6055-80-459170-0000 | 8 | "ALL that certain plot, piece or parcel of land, situate, lying and being in the City of Beacon, County of Dutchess and State of New York bounded and described as follows: BEGINNINC at intersection of the southerly line of Fishkill Avenue with the northeasterly line of lands of Sambells and running thence with line of lands of Sambells south sixty (60) degrees twenty one (21) minutes thirty (30) seconds east one hundred thirty and five tenths (130.5) feet **to the northwesterly line of the New York, New Haven & Hartford Railroad Co. thence with the northwesterly line of the New York, New Haven & Hartford Railroad Co. north twenty five (25) degrees forty (40) minutes east fifty and twelve hundredths (50.12) feet**; thence with other lands of party of the first part (Eraca) north sixty (60) degrees twenty one (21) minutes thirty (30) seconds west one hundred twenty seven and three hundredths (127.03) feet to the southeasterly line of Fishkill Avenue aforesaid; . . . ." <br><br> (Pls.' Ex. 32a). | Rebutted, does not apply |

| | | | |
|---|---|---|---|
| Beacon Lodge No. 1493, Benevolent Protective Order of Elks (BPOE): 130200-6054-37-004630-0000 | 9 | "BEGINNING at a point in the northeasterly side of Wolcott Avenue formerly called Wiccopee Street at its junction with the south easterly side of Fulton Avenue formerly called William Street and running thence along the southeasterly side of Fulton Avenue north forty two degrees thirty minutes east four hundred sixty seven feet six inches more or less, . . . , and Gibney and along the southwest line of land conveyed to Harrison B. Ellis, three hundred thirty one and five tenths feet more or less **to the northwest side of Tioronda Avenue thence south forty two degrees thirty minutes west along the northwest side of Tioronda Avenue three hundred four and eight tenths feet more or less to Wolcott Avenue** and thence along Wolcott Avenue northwesterly three hundred fifty three feet six inches to the place of beginning. Being all of the land conveyed by William Rothery to James G. Meyer by deed dated May 8, 1896 recorded May 12, 1896 in Liber 285 of deeds at page 389, in the Dutchess County Clerk's Office. **Excepting however therefrom a small parcel of land on Tioronda Avenue which was heretofore conveyed to the Newburgh, Dutchess and Connecticut Railroad Company and the parcels conveyed by James G. Meyer and others to Arcelious Moss, Louis Deitz, James J. Gibney, Egbert A. Eastwood, Julia Van Buren, and Harrison B. Ellis."**<br><br>(Pls.' Ex. 33a). | Rebutted, does not apply |
| Joseph Bochichio: 132800-6357-04-933354-0000 | 10 | "ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situated, lying and being in the Town of East Fishkill, County of Dutchess, State of New York, known and designated as **Lot No. 18 on a map entitled "Shadowbrook Estate, Sub-division Plat for Herbert Stenger" and filed in the office of the Dutchess County Clerk as filed Map No. 5055.**"<br><br>(Pls.' Ex. 34a). | Applies |

| | | | |
|---|---|---|---|
| Daniel P. & Jeanne Burke: 132800-6657-03-124222-0000 | 12 | "Beginning at a point on the Easterly side of Old Road 52 which said point is the Southwesterly corner of lands now or formerly of Union Church and the Northwest corner of the premises herein described; . . . ; thence Southerly along lands now or formerly of said Van Anden South 7°29'25" West 45.19 feet **to a point in the Northerly line of lands now or formerly of Penn Central Railroad which said point is the Southeasterly corner of the herein described premises**; thence Westerly along a curve to the right having a radius of 1860.50 feet a length of 282.58 feet to a point on the Easterly side of Old Route 52 which said point is also the Southwesterly corner of the herein described premises; thence Northerly along Old Route 52 North 18°28'39" West 125 feet to the point or place of beginning." (Pls.' Ex. 35a). | Rebutted, does not apply |
| Robert Caccomo: 134089-6855-02-748688-0000 | 13 | "ALL that certain plot, piece or parcel of land, situate, lying and being in the Town of Pawling, County of Dutchess and State of New York shown and designated as **Lot No. 2 on a certain map entitled, "Subdivision of Amico Nuriza" filed in the Dutchess County Clerk's Office, on April 16, 1985 as Map No. 7212** being more particularly bounded and described as follow: BEGINNING at a point on the westerly side of Route 292 where same is intersected by the division line between lands now or formerly of Leight on the south and the herein described premises on the north; . . . THENCE continuing along said lands, South 83 degrees 41' 58" West 33.51 feet to a point; **THENCE continuing North 16 degrees 33' 00" West 741.37 feet to a point on the division line between Parcels 1 and 2 on said map;** THENCE continuing along said division line, South 71 degrees 26' 38" East 207.80 feet and North 81 degrees 33' 22" East 285.00 feet to the westerly side of Route 292; THENCE continuing along the westerly side of Route 292 South 01 degrees 54' 39" West | Applies |

| | | | |
|---|---|---|---|
| | | 52.32 feet to the point and place of BEGINNING." | |
| | | (Pls.' Ex. 36a). | |
| Christine A. Callahan: 132800-6356-02-532956-0000 | 14 | "ALL that certain plot piece or parcel of land, situate, lying and being in the TOWN OF EAST FISHKILL, County of Dutchess and State of New York, and being more particularly described as **Lot No. 1 on a map entitled Section 2, Lomala Land Development Corp. prepared by Ernst Martin, L.S. and filed in the Dutchess County Clerk's Office on March 16, 1973 as Map No. 4087."** (Pls. Ex. 37a). | Applies |
| Gregory & Jaclyn Chamberlain: 132800-6356-01-364717-0000 | 15 | "ALL that certain plot, piece, or parcel of land situate, lying and being in the Town of East Fishkill, County of Dutchess and State of New York, known and designated as **Lot 4-1 as shown on a map entitled "SUBDIVISION PLAT - SECTION 4 & SECTION 5 - Lomala DEVELOPMENT CORP.**, situate in the Town of East Fishkill, Dutchess County, N.Y.", dated May 1981, revised October 22, 1981, prepared by Ernst Martin, L.L.S., and filed in the Dutchess County Clerk's Office on October 30, 1981 as filed map # 6240, bounded and described as follows: BEGINNING at a steel pin set on the northeasterly line of Lomala Land {a/k/a} Brooklyn Drive as per filed map} marking the northwesterly line of the Metro North Railroad, (formerly Dutchess-Columbia R.R. Co.), thence **northeasterly along the division line between the herein described parcel and the northwesterly line of the Metro North Railroad,** North 42-34-50 East 270.00 feet to a steel pin marking the southeasterly corner of the lands now or formerly Joseph Longhitano as described in Liber 1758 cp 282 (Lot 4-2, filed map 6240), . . ." (Pls. Ex. 38a). | Applies |
| John & Alexandra Colbert: 134089- | 16 | "**FIRST DESCRIBED PARCEL: BEGINNING** at the northeast corner and | Applies |

| | | | |
|---|---|---|---|
| 6855-00-537924-0000 | | running due west along lands of Joseph Holmes to a brook and lands owned by George Turner to the next brook west and lands owned by Captain James Turner **to the west side of the New York and New England Railroad about eight (8) rods; thence north to a spring of water to a post driven in the ground for a boundary**; thence east along lands of Captain James Turner to the New York and New England Railroad; thence north along said railroad to a culvert in said railroad . . . Parcel A: "BEGINNING at a point at the southeast corner of the premises herein described said point being the intersection of the westerly side of the New York, New Haven, Hartford Railroad Company and the northeast line of property formerly of Miller…running thence South 86° 35' 00" East 65.28 feet **to the lands of the New York, New Haven, Hartford Railroad, running thence South 01° 49' 00" East 54.05 feet . . ."**<br><br>(Pls.' Ex. 39a). | |
| James Anthony D'Amato Irrevocable Trust: 132800-6357-04-700183-0000 | 17 | "ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of East Fishkill: **24 Helin Drive Hopewell Junction, New York 12533 (Parcel Number: 132800-6357-04-700183-0000)"**<br><br>(Pls.' Ex. 40a). | Applies |
| Paul & Dana D'Amore: 134089-6856-00-469425-0000 | 18 | "ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Pawling, County of Dutchess and State of New York, described as **Lot No. 1 on a certain map entitled "Subdivision Plat prepared for Wendy and Fred H. Lates, III, situate in the Town of Pawling", which plat was filed in the Dutchess County Clerk's Office on November 18, 1982, as Map No. 6500**, containing by estimation 2.8558 acres more or less." | Applies |

| | | (Pls.' Ex. 41a). | |
|---|---|---|---|
| Frank Michael Demaria & Kara Chamberlain: 13.-2-41 | 19 | "ALL that certain plot, piece or parcel of land, situate, lying and being in the Town of Patterson, County of Putnam, State of New York, known and designated as **Lot No. 11 on a certain map entitled, "Map One, Mooney Hill Heights" which map was filed in the Putnam County Clerk's Office on March 22, 1961 as Map No. 908.**" <br><br> (Pls.' Ex. 42a). | Applies |
| Trevor DiStefano: 132800-6557-04-956163-0000 | 20 | "ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon, erected, situate, lying and being in the Town of East Fishkill, County of Dutchess and State of New York, known and designated as **Lot No. 1 on a certain map entitled, "Subdivision Plat of Pond View Estates", dated September 29, 1992 and last revised February 4, 2004 and filed September 28, 2005 in the Office of the Dutchess County Clerk as Map No. 1185,** said lot being bounded and described as follows: BEGINNING at a point on the northerly side of Route 52 where the division line between Lot No. 1 and Lot No. 2 as shown on the aforementioned map intersects the northerly side of Route, 52; . . . THENCE along said last mentioned land, North 21 degrees 53 minutes 00 seconds East, 632.03 feet **to land now or formerly of Consolidated Rail Corporation; THENCE along said last mentioned land, South 78 degrees 41 minutes 00 seconds East, 151.11** feet to the division line between Lot No. 1 and Lot No. 4 on the aforementioned map; . . . ." <br><br> (Pls.' Ex. 43a). | Applies |
| DKH Realty, LLC: 130200-6055-80-443076-0000 | 21a | "BEGINNING at a point on the south line of Fishkill Avenue, Beacon-Fishkill State Highway, Route 52, said point being South 29° 38' 30" W a distance of 253.38 feet from the southwest corner of lands now or formerly of G. Gravelin, thence South 60° 10' 32" E for 138.58 feet along the South Line of a 12-inch block wall within the building said line | Rebutted, does not apply |

| | | | |
|---|---|---|---|
| | | passes, through said line is also North of the North face of a line of Steel Columns, **to the North line of the former New York, New Haven and Hartford Railroad, thence southerly along said line on a curve concave to the South** with a radius of 3,224.17 feet for a distance of 96.08 feel to lands now or formerly of Shaw Holding Corp., thence along said line North 60° 21' 30" W for 136.46 feel to the South line of Fishkill Avenue aforesaid, thence North 29° 38' 30" E for 96.49 feet to the point and place of beginning."<br><br>(Pls.' Ex. 44a). | |
| DKH Realty, LLC: 130200-6055-80-450087-0000 | 21b | "BEGINNING at an iron pin on the South line of Fishkill Avenue, Beacon-Fishkill State highway, Route 52 said point being South 29° 38' 30" W a distance of 128.38 feet from the southwest comer to lands now or formerly of F. Gravelin, thence South 60° 01' 07" E for 137.09 feet **to the north line of the former New York, New Haven and Hartford Railroad, thence southerly along said line** on a curve concave to the south with a radius of 3,224.17 feet for a distance of 125.32 feet, thence North 60° 10' 32" W for 138.58 feet to highway line aforesaid, thence North 29° 38' 30" East for 125.00 feet to the point and place of beginning."<br><br>(Pls.' Ex. 44a). | Rebutted, does not apply |
| DKH Realty, LLC: 130200-6055-80-455098-0000 | 21c | "BEGINNING at an iron pin on the south line of Fishkill Avenue, Beacon-Fishkill Highway, Route 52, which point is the southwest corner of lands now or formerly of G. Gravelin; thence South 29° 38' 30" West 128.28 feet to a point, said point also being on the south line of said street and said point being the southwest corner of the herein described parcel and the northwest comer of lands now or formerly of Hudson Motors Corp., thence South 60° 01' 07" or East 137.09 feet **to the north line of the former New York, New Haven and Hartford Railroad: thence on a curve to the north** with a radius of 3,224.17 | Rebutted, does not apply |

| | | |
|---|---|---|
| | | feel for a distance of 122.78 feet thence North 25° 40' 00' East 6.29 feel to the southeast corner of said lands now or formerly of F. Gravelin; thence along the line of Gravelin North 60° 21' 30' West 130.50 feet to the place of beginning." (Pls.' Ex. 44a). | |
| DKH Realty, LLC: 130200-6055-80-439071-0000 | 21d | "Parcel II: All that tract or parcel of land situated in the City of Beacon, County of Dutchess, State of New York bounded and described as follows: Beginning as a point, said being the intersection of the northerly line of lands now or formerly Reinoehl North (Liber 433 CP 924) with easterly line of Fishkill Avenue and thence running along said easterly line of Fishkill Avenue North 29° 38' 30" East | Rebutted, does not apply |
| DKH Realty, LLC: 130200-6055-80-424048-0000 | 21e | 537.00 feet thence along the southerly line of lands now or formerly Freedom Ford (Brownell) South 60° 21' 30" East, 136.38 feet; **thence along the westerly line of lands now or formerly Conn Rail Corporation, along a curve to the right** having a radius of 3224.17 feet and being distant southerly 541.60 feet; thence along said lands of Reinoehl North 60° 21' 30" West 71 feet to the point of beginning." (Pls.' Ex. 44d). | |
| Colin & Kristy Dunnigan: 132800-6557-03-328185-0000 | 22 | "ALL that certain plot, piece or parcel of land situate, lying and being in the Town of East Fishkill, County of Dutchess and State of New York, being designated as **Lot No. 26 on a certain map entitled, "Johnson Estates, Section I, Town of East Fishkill, Dutchess County, New York"**, made by Richard G. Barger, L.S. & P.E. dated April 18, 1991, last revised March 26, 1992 and filed May 1, 1992, in the Office of the Dutchess County Clerk as Filed Map No. 9470, being bounded and described as follows: BEGINNING at a point along the southerly line of Woodcrest Drive, . . . RUNNING THENCE South 68° 44' 40" East 118.31 feet **to a point along the** | Rebutted, does not apply |

| | | | |
|---|---|---|---|
| | | **northerly line of the lands of Consolidated Rail Corp.; RUNNING THENCE in a westerly direction along the northerly line of the Consolidated Rail Corp., North 81° 10' 45" West 299.34 feet to a point**; RUNNING THENCE on a curve to the right with a radius of 2,815.43 feet and a length of 291.62 feet to the southeasterly corner of the aforesaid Lot 25; RUNNING THENCE in a northerly direction along the easterly line of Lot 25 North 10° 34' 14" West 418.81 feet to the point of BEGINNING."<br><br>(Pls.' Ex. 45a). | |
| Raymond V. & Sonia Earle: 132800-6657-03-051177-0000 | 23 | "ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of East Fishkill, County of Dutchess, and State of New York, being designated as **Lot No. 6 on a certain map entitled "Subdivision Plat of Pond View Estates" filed in the Office of the Dutchess County Clerk on September 28, 2005 as Filed Map No. 11851.**"<br><br>(Pls.' Ex. 46a). | Applies |
| FPGU, Inc.: 130200-6055-80-463114-0000 | 24 | "BEGINNING at the intersection of the southeasterly line of Fishkill Avenue with the Northeasterly line of lands of Ross and running thence along Fishkill Avenue 140 feet; thence South 60° 21' 30" East **to the northwesterly line of the New York, New Haven, and Hartford Rail Co.; thence with the Railroad southwesterly to the easterly corner of Ross**; thence along the northeasterly line of land of Ross North 60° 21' 30" West 130.5 feet to the place of beginning."<br><br>(Pls.' Ex. 47a). | Rebutted, does not apply |
| Irma Farfaro 132800-6357-04-819293-0000 | 25 | "BEGINNING at a point on the southerly side of the highway leading from Hopewell to Fishkill Village, said point being the northeasterly corner of the herein described parcel and being 200.00 feet westerly from the northwesterly corner of the land of Zago; | Rebutted, does not apply |

thence southeasterly S 45° 36' E 596.80 feet **to a point on a fence, northerly side of the Newburgh, Dutchess and Connecticut Railroad**; thence easterly along said fence N 63° 33' E 200.00 feet to a fence corner; the southwesterly corner of the aforementioned Zago; **thence southeasterly, crossing said Railroad**, S 37° 46' E 102.84 feet to a fence corner, the northwesterly corner of the land of Doughty; thence southeasterly along a fence, the westerly line of said Doughty, S 34° 49' E 900.97 feet to a fence corner, the southeasterly corner of the herein described parcel; thence southwesterly along a fence, the northerly line of said Doughty, the following courses and distances, S 34° 46' W 302.71 feet, S 65° 51' W 27.42 feet, S 85° 30' W 55.29 feet and S 27° 11' W 55.00 feet to a point in the center of Fishkill Creek, being the southwesterly corner of the herein described parcel; thence northwesterly along the center of said Creek, as it winds and turns, 1975 feet more or less to a point, which point is N 56°16' W 1012.97 feet from the southwesterly corner of the herein described parcel; thence continuing northwesterly along the center of a 50 foot right of way N 35° 55' W 181.50 feet **to a point in the fence the southerly side of the aforementioned railroad; thence continuing northwesterly a continuation of the same line the center of said right of way, crossing said railroad N 35° 55' W 92.12 feet to a point on a fence the northerly side of said railroad**; thence continuing northwesterly on a continuation of the same line the center of said right of way north 35°55' West 477. 76 feet to a point; thence northeasterly along the center of said right of way N 15° 05' E 102.29 feet to a point, being the northwesterly corner of the herein described parcel, on the southerly side of the aforementioned highway; thence easterly along the southerly side of said highway the following courses and distances, N 51° 48' E 167.47 feet, N 65° 26' E 66.10

| | | | |
|---|---|---|---|
| | | feet and N 68° 52' E 171.42 feet to the point or place of beginning." (Pls.' Ex. 48a). | |
| Faust Wilkins Properties, LLC: 69.-1-11.2 | 26 | "ALL that certain plot, piece or parcel of land, situate, lying and being in the Town of Southeast, County of Putnam and State of New York, known and designated as **Lot 2 on a certain map entitled, "Final Subdivision Plat of Route 6 East", dated June 13, 1994, revised August 18, 1994 and filed October 13, 1994 in the Putnam County Clerk's Office as Filed Map No. 2627.** Subject to an access easement granted in Liber 1668 CP 386." (Pls.' Ex. 49a). | Applies |
| Rodney Fergus: 133089-6155-03-300486-0000 | 27 | "ALL that lot, piece or parcel of land, situate, lying and being in the Town of Fishkill, County of Dutchess and State of New York, shown and designated as **Lot No. 1 on a certain map entitled "Kip House Subdivision Plat on file in the Office of the Dutchess County Clerk as filed Map No. 10734.** Said Lot No. 1 being more particularly described as follows; BEGINNING at a point in the southerly bounds of Old Glenham Road, said point being an iron rod found at the northeast corner of the herein described Lot No. 1; THENCE RUNNING with the southwesterly bounds of filed maps numbered 2352 and 2442, along iron rods set on line, south 31 degrees 05 minutes 00 second east 851.40 feet to an iron rod set, south 27 degrees 27 minutes 58 seconds east 228.36 feet to an iron rod set south 31 degrees 31 minutes 18 second east 283.59 feet **to an iron rod set at the south corner of Lot No. 55 of filed Map No. 2442 and in the northerly bounds of lands now or formerly of the Metro North Commuter Rail Road Co. (Liber 1956 Page 339); THENCE RUNNING with said lands of Metro North** south 64 degrees 23 minutes 13 seconds west 1672.19 feet to an iron rod set at the westerly corner of lands now or formerly Mahopac | Applies |

| | | | |
|---|---|---|---|
| | | Park Terrace, Inc. (Parcel I of Liber 1433 page 334); . . ." <br><br> (Pls.' Ex. 50a). | |
| Alberto & Elizabeth Garcia: 132800-6357-04-753189-0000 | 29 | "BEGINNING at a point on the Northeasterly line of Helin Road, said point being the intersection of the Northeasterly line of said Helin Road with the Northwesterly line of lands of Lot No. 2 **as shown on a certain map entitled, "Subdivision for Michael McAllister" and recorded in the Dutchess County Clerk's Office as Map Number 11128**; RUNNING THENCE along the Northeasterly line of said Helin Road, North 45 degrees 35 minutes 40 seconds West, 216.00 to a point on the Southeasterly line of lands of Metro North: RUNNING THENCE leaving said line and **running along the Southeasterly line of lands of said Metro North, North 62 degrees minutes 40 seconds East, 380.00 feet to a point**; RUNNING THENCE leaving said line and running along the Southwesterly and Northwesterly lines of lands of aforesaid No. 2, as shown on said Map No. 11128, the following: . . ." <br><br> (Pls.' Ex. 52a). | Rebutted, does not apply |
| Christian & Kristie Gautier: 132800-6357-04-962378-0000 | 30 | "ALL that certain plot, piece or parcel of land, situate, lying and being In the Town of East Fishkill, County of Dutchess and State of New York, described as **Lot No. 20 on a certain map entitled, "Shadowbrook Estates", subdivision post for Herbert Stenger, and filed In the Office of the Dutchess County Clerk's Office as Flied Map No. 5055."** <br><br> (Pls.' Ex. 53a). | Applies |
| Derek Gibb: 132200-6758-00-815192-0000 | 33 | "ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Beekman, County of Dutchess and State of New York, described as follows: **BEGINNING at an iron pipe on the westerly boundary of the Depot Hill Road, said pipe being on the westerly boundary of** | Rebutted, does not apply |

23

| | | | |
|---|---|---|---|
| | | **the New York, New Haven and Hartford Railroad**; THENCE along the west side of said road, North 11 degrees 33 minutes 42.82 feet to a pipe driven in the ground on the south side of a thirty-three foot right of way; . . . THENCE South 73 degrees 53 minutes East about 200 feet **to lands of the New Yark, New Haven and Hartford Railroad, which point is seventeen feet North 25 degrees 12 minutes East from an iron pipe driven in the boundary line of said railroad lands; THENCE along lands of said railroad**, North 25 degrees 12 minutes East, 300 feet to the point or place of BEGINNING." <br><br> (Pls.' Ex. 55a). | |
| Gisonni Living Trust: 132800-6457-04-941311-0000 | 34 | "ALL THE CERTAIN PLOT, PIECE OR LAND, WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED, SITUATED LYING AND BEING IN THE TOWN OF EAST FISHKILL COUNTY OF DUCHESS AND STATE OF NEW YORK, **BEING LOT NO. 27 ON "SUBDIVSION PLAT FOR LUKE VISTAS SECTION 3", FILED JUNE 23, 1988 AS MAP NO. 8424.** <br><br> Commonly known as: 12 Darci Drive, Hopewell Junction, NY 12533[.]" <br><br> (Pls.' Ex. 56a). | Applies |
| Sharon Gladman: 134089-6855-02-752792-0000 | 35 | "BEGINNING in the westerly line of the road from Holmes to Whaley Lake (Route 216) and the northeast corner of lands of Russell, formerly Watson Ballard, and RUNNING THENCE along the road northerly 133 feet more or less to lands of White: THENCE along the same westerly 333 feet more or less to a corner; THENCE northerly 38 feet more or less to the corner of the lands of Mina; THENCE westerly 284 feet more or less **to the New Haven Railroad; THENCE along the Railroad southerly 97 feet to a corner**; THENCE along lands of Callahan easterly 290 feet more or less to a corner and southerly 65 feet more or less to a corner; THENCE | Rebutted, does not apply |

| | | | |
|---|---|---|---|
| | | along said lands of Russell easterly 350 feet more or less to the place of BEGINNING. Premises also described according to a survey made by David L. Odell, PLS dated 11-28-18 as follows: ALL that certain plot, piece or parcel of land situate, lying and being in the Town of Pawling, County of Dutchess and State of New York, bounded and described as follows: . . . RUNNING THENCE along the last mentioned dividing line, the following two (2) courses and distances: North 8 degrees 36' 10" East, a distance of 63.50 feet; North 87 degrees 51' 30" West, a distance of 295.52 feet **to a point on the dividing line between the premises herein described and lands formerly New Haven Railroad, now or formerly Consolidated Rail Corp; RUNNING THENCE along the last mentioned dividing line**, North 4 degrees 05' 10" West, a distance of 97.52 feet to a point on the dividing line between the premises herein described and lands formerly Mina, now or formerly Humphreys and Valente; . . ."<br><br>(Pls. Ex. 57a). | |
| Kimberly Gray: 133089-6155-01-487580-0000 | 36 | "All that tract or parcel of land situated in the town of Fishkill, County of Dutchess, State of New York, described as follows. Grid No. 133089- 6155-01-487580-0000."<br><br>(Pls.' Ex. 58a). | Applies |
| Christine M. Harsaghy: 132800-6657-03-426214-0000 | 37 | "Tax/Parcel ID No.: Section 6657 Block: 03 Lot: 426214 All that certain plot, piece of land with the buildings and improvements thereon erected, situate, lying and being in the Town of East Fishkill, County of Dutchess and State of New York, being shown and designated as Lot 3 on a map entitled **"Subdivision Plat for Vassari Subdivision", and filed in the Dutchess County Clerk's Office on April 2, 2001, as Map # 11160**, said lot being particularly bounded and described as follows: Beginning at a point in the northerly line of Seaman Road, said point being the southeast corner of Lot 2 as shown on aid | Rebutted, does not apply |

| | | | |
|---|---|---|---|
| | | filed Map # 11160 and the southwest corner of the herein described premises, and running from thence along the easterly line of said Lot 2, North 03° 30' 00" East 473.92 Feet **to a point in the southerly line of lands now or formerly of the Metro North Railroad; thence along the southerly line of lands now or formerly of the Metro North Railroad; thence along the southerly line of said railroad**, South 57" 19' 00" East 143.17 feet to the northwest corner of lot 4 as shown on said map; . . .."<br><br>(Pls.' Ex. 59a). | |
| Abigail & Christopher Hedden: 132800-6356-01-386683-0000 | 38 | "ALL that certain plot, piece or parcel of land, situate, lying and being in the Town of East Fishkill, County of Dutchess and State of New York, and **known and designated as Lot No. 2 on a certain map entitled, "Map of Subdivision for Haimelin & Schiewschienko", which said Map was filed in the Dutchess County Clerk's Office on October 6, 1987 as Map No. 8148.**"<br><br>(Pls.' Ex. 60a). | Applies |
| Kim & Thomas Herman: 13.-2-39 | 39 | "PARCEL I ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE TOWN OF PATTERSON, COUNTY OF PUTNAM, AND STATE OF NEW YORK, BEING BOUNDED AND DESCRIBED:AS FOLLOWS: BEGINNING AT THE POINT OF INTERSECTION OF THE SOUTHERLY LINE OF MOONEY HILL ROAD AND THE EASTERLY LINE OF LANDS NOW OR FORMERLY OF A. B. PARKS, INC.; . . . RUNNING THENCE SOUTH 86 DEGREES 00 MINUTES 56 SECONDS WEST 82.31 FEET AND SOUTH 88 DEGREES 44 MINUTES 31 SECONDS WEST 13.66; **CONTINUING THENCE ALONG LANDS NOW OR FORMERLY OF NEW YORK HAVEN AND HARTFORD RAILROAD COMPANY** SOUTH 77 DEGREES 02 MINUTES 21 SECONDS WEST 65.72 FEET AND SOUTH 0 DEGREES 49 MINUTES 38 | Rebutted, does not apply |

| | | SECONDS EAST 224.32 FEET TO A POINT ON THE LINE OF LANDS NOW OR FORMERLY OF A.H. PARKS, INC.; . . . | |
| :---: | :---: | :--- | :---: |
| | | PARCEL II ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE TOWN OF PATTERSON, COUNTY OF PUTNAM AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS: | |
| | | **BEGINNING AT A POINT AT THE MOST SOUTHERLY CORNER OF THE PREMISES HEREIN DESCRIBED, SAID POINT BEING DISTANT 49.5 FEET EASTERLY FROM STATION 10477 34.5 OF THE MONUMENTAL CENTER LINE OF THE RAILROAD FORMERLY LEADING FROM BOSTON TO HUDSON RIVER, MEASURED AT RIGHT ANGLES THERETO; THENCE IN A GENERAL NORTHERLY AND NORTHWESTERLY DIRECTION IN A LINE PARALLEL TO AND CONCENTRIC WITH AND DISTANT 49.5 FEET EASTERLY AND NORTHEASTERLY FROM SAID CENTER LINE MEASURED AT RIGHT ANGLES AND RADIALLY THERETO RESPECTIVELY AND BOUNDED WESTERLY AND NORTHWESTERLY ON REMAINING RAILROAD LAND 955 FEET MORE OR LESS TO A POINT IN THE SOUTHERLY LINE OF A HIGHWAY; THENCE EASTERLY ALONG SAID·SOUTHERLY LINE OF SAID HIGHWAY 241 FEET MORE OR LESS TO A POINT; . . . .”** | |
| | | (Pls.' Ex. 61a). | |
| Holcomb Trust: 132800-6457-04-991177-0000 | 40 | "BEGINNING at the northwesterly corner of lands of Bryant M. Holcomb & Claudine Fowler Allen Holcomb as described in deed dated April 18, 2012 and recorded in the Dutchess County Clerk's Office on April 25, 2012 in Deed Document No. 02-2012-1777, | Applies |

| | | | |
|---|---|---|---|
| | | said point **being on the southerly side of lands of Metro-North Commuter Railroad Company as described in Deed Document No. 02-2009-1705** and along the westerly side of lands of Taconic State Parkway as described In Book 418 of Deeds at Page 1, said point being distant S 28°24'41" W 1.09 feet from a concrete monument found; **Thence from said point of beginning, along the northerly bounds of said lands of Holcomb and southerly bounds of said lands of Metro North Commuter Railroad Company, N 43°48'28" W 1,481.06 feet to a capped iron rod set at the northerly end of a stone wall at the northwesterly corner of the herein described parcel;** Thence continuing along said division line in part, along the division line of the herein described parcel and Lots No. 27 through 31 and the Easterly terminus of Andrews Road as shown on a map entitled "Subdivision Plat for Lake Vistas -3"<br><br>(Pls.' Ex. 62a). | |
| Jonathan Humphreys & Jennifer Valente: 134089-6855-02-711829-0000 | 41 | "Section 6855 Block 02 Lot 711829 County or Town PAWLING Street Address 411 Route 292 Holmes, New York 12531."<br><br>(Pls.' Ex. 63a). | Applies |
| Michael Huxta: 130200-6054-30-177846-0000 | 42 | "Parcel II. Beginning in the northwesterly line of Main Street at the northeasterly corner of lands of Papo at a point distant north easterly 52.23 feet from the intersection of the northwesterly line of Main Street with the northeasterly line of Herbert Street and running thence **with the northwesterly line of Main Street the following courses and distances, north 42 degrees 5 minutes 20 seconds east 40 feet; thence north 29 degrees 58 minutes 40 seconds east 60.74 feet to an iron pin set in the ground;** thence with lands of Green Fuel Economizer Co., Inc. north 49 degrees 40 minutes west 86.11 feet; thence with other lands of Keating Estate South 38 degrees 58 minutes 40 seconds west 100.44 feet; thence with other lands of Papo | Rebutted, does not apply |

| | | | |
|---|---|---|---|
| | | south 50 degrees six minutes east 93.42 feet to the place of beginning." (Pls.' Ex. 64a). | |
| J & T Sunset Farms, LLC: 132800-6457-04-971374-0000 | 43a | "BEGINNING in the line of lands of Rapelje now or formerly; and **RUNNING North 64 degrees 45' East 864.00 feet crossing the New York N.H. & H.R.R.; THENCE North 41 degrees 05' West, 350.00 feet**; North 39 degrees 00' West 505.00 feet; THENCE South 36 degrees 20' West, 175.00 feet; South 52 degrees 00' East, 146.00 feet; and South 65 degrees 00' East, 170.00 feet to lands of Fowler now or formerly; THENCE Southwesterly along Fowler, South 33 degrees 30' West crossing the N.Y.N.H. & H.R.R. 1270.00 feet to lands now or formerly of Dutchess Park Knolls, Inc.; THENCE northwesterly along a stone wall 730 feet more or less to the point and place of BEGINNING. Subject to the rights of the N.Y.N.H. & H.R.R. Co. EXCEPTING, all lands south of and including the bed of The N.Y.N.H. & H. R.R. Co." (Pls.' Ex. 65a). | Applies |
| J & T Sunset Farms, LLC: 132800-6557-03-046356-0000 | 43b | "ALL that certain plot piece or parcel of land, situate, in the Town of East Fishkill, Dutchess County, New York, bounded and generally as follows: On the north by lands of Joseph Genung and Francis Berry; on the east by lands of Thomas Baldwin and the Public Highway; leading from Hopewell to the Fishkill and Stormville Road; on the south and west by lands of John B. Emans. Containing fifty-seven acres of land, more or less; formerly occupied by John C. Luyster, now deceased. This description being taken from a deed from John P. Luyster to Stephen McCabe dated April 6th 1867 and recorded in the Dutchess County Clerk's Office April 6th 1867 in Liber 139 page 47, etc." (Pls.' Ex. 65d). | Unclear, questions of fact remain for trial |
| J & T Sunset Farms, LLC: | 43c | "BEGINNING at the northwest corner of the farm of John O. and Emma Langenegger; | Rebutted, does not apply |

| | | | |
|---|---|---|---|
| 132800-6557-03-205343-0000 | | THENCE RUNNING westerly along a stone wall and in a line in continuation thereof to lands of the Emedine Farm; THENCE southerly along the east line of the Emedine Farm to land of the New York and New Haven Railroad Company; **THENCE easterly along the northerly line of lands of said Railroad Company to the public highway leading to Fishkill Furnace**; THENCE northerly along the highway to the southeast corner of lands of said Langenegger; . . . ." <br><br> (Pls.' Ex. 65d). | |
| Aaron & Kristine Jackson: 134089-6856-00-472512-0000 | 44 | "ALL that certain plot, piece or parcel of land situate, lying and being in the Town of Pawling, County of Dutchess, and State of New York **being known and designated as Lot 1 on a certain map entitled, "Subdivision Plat Prepared for W. Robert Weidner & Carey L. Weidner" dated 5/1/85 and filed in the Dutchess County Clerk's Office on 8/20/85 as Filed Map No. 7349."** <br><br> (Pls.' Ex. 66a). | Applies |
| JAT Farms, LLC: 134089-6855-00-581869-0000 | 45 | "BEGINNING at a point in the westerly line of Route 216, the said point being the southeasterly corner of the herein described parcel and being the northeasterly corner of lands now or formerly of David Turner; thence along the westerly line of Route 216 the following four courses and distances: North 11 ° 02' East 148.29 feet; North 23° 50' East 207.42 feet; North 01 ° 51' West 55.11 feet North 06° 47' West 135.93 feet to the southeasterly corner of lands now or formerly of North; . . . thence along the northerly line of lands now or formerly of David Turner the following nine courses and distances: South 87° 40' East 206.21 feet; South 89° 10' East 313.00 feet; South 87° 30' East 228.41 feet; South 89° 32' East 1148.49 feet; South 86° 56' East 84.56 feet; South 86° 37' East 228.97 feet; South 82° 22' East 102.04 feet South 88° 56' East 399.10 feet; South 87° 35' East | Rebutted, does not apply |

| | | | |
|---|---|---|---|
| | | 259.61 feet to the point or place of beginning. EXCEPTING AND RESERVING Lots 1, 2, and 3 on Map No. 9071.<br><br>**ALSO excepting any land in the bed of the Railroad.**"<br><br>(Pls.' Ex. 67a). | |
| Joe's Hill Road, LLC: 68.-2-41 | 46 | "Beginning at a point marked by a State Highway monument at the intersection of the Easterly side of Joes Hill Road and the Northerly side of State Highway #1455 (U.S. Route #6) thence running from said point of beginning as thus established and along the Easterly side of said Joes Hill Road and part of the distance along the road face of a stone wall the following courses and distances, to wit: North 0 degrees 09 minutes 20 seconds West 36.65 feet to a point marked by a State Highway monument; North 20 degrees 59 minutes 10 seconds West 107.89 feet; North 27 degrees 17 minutes 00 seconds West 63.85 feet; North 18 degrees 55 minutes 40 seconds West 26.18 feet; North 12 degrees 29 minutes 00 seconds West 75.31 feet; North 77 degrees 31 minutes 00 seconds East 3.00 feet and North 9 degrees 23 minutes 20 seconds East 19.49 feet **to lands of the New York, New Haven and Hartford Railroad; Thence running along the said lands of the New York, New Haven and Hartford Railroad South 83 degrees 19 minutes 50 seconds East 304. 79 feet to a point** and to other lands of James Snidero and Ida M. Snidero, his wife; . . ."<br><br>(Pls.' Ex. 68a). | Applies |
| Gayle Johnson: 132800-6356-01-391707-0000 | 47 | "ALL that certain plot, piece, or parcel of land with the buildings and improvements thereon erected, situate, lying and being in the Town of East Fishkill, County of Dutchess and State of New York, being bounded and described as follows: **BEGINNING at the intersection of the northeasterly side of Brooklyn Drive with land now or formerly of the Consolidated Rail Corp., said point being** | Applies |

| | | | |
|---|---|---|---|
| | | **North 84 degrees 32' East 990 feet +/- or South 16 degrees East 680 +/- from the southeasterly corner of lands now or formerly Consolidated Rail Corp., North 42 degrees 56'00" East 286.74 feet to a point**; thence along lands now or formerly Browne, (Liber 1396 cp 374), South 37 degrees 24'00" East 225.45 feet to a point; thence along lands now or formerly of Petrovicik (Liber 1611, cp 897), South 51 degrees 39'00" West 196.10 feet to a point; thence along the northeasterly line of Brooklyn Drive, North 62 degrees 52'00" West 200.00 feet to the point or place of BEGINNING." <br><br> (Pls.' Ex. 69a). | |
| Jenette Klein: 132200-6757-00-198491-0000 | 48 | **"BEGINNING at the southwest corner, a point marked by a iron pipe set in the northeasterly line of the lands of the New York, New Haven and Hartford Railroad and in the easterly line of South Greenhaven Road** and continuing from said point of beginning, thence northerly along the easterly line of South Greenhaven Road, N 16 deg. 52' 40" W 876.40 feet to a iron pipe set marking the southwest corner of the lands of Herman G. & Ethel M. Gotsch, . . . thence southerly along the westerly line of the lands of Garlando, the following seven courses and distances S 20 deg. 31' 50" E 357.06 feet, S 20 deg. 12' 40" E 175.75 feet, S 19 deg. 57' 50" E 195.59 feet, S 20 deg. 20' 00" E 289.03 feet, S 18 deg. 51' 00" E 109.71 feet, S 22 deg. 24' 40" E 207.75 feet, and S 20 deg. 36' 20" E 152.75 feet **to an iron pipe set marking a corner in the northwesterly line of the lands of the New York, New Haven & Hartford Railroad, said point also marking the southeast corner of the herein described parcel, thence southwesterly and westerly along the northwesterly and northerly line of the lands of said railroad,** on a curve to the right of radius 1357.69 feet an arc distance of 890.00 feet, thence S 4 deg. 30' 50" W 25.50 feet, thence northwesterly | Applies |

| | | | |
|---|---|---|---|
| | | along the northeasterly line of the lands of said railroad on a curve to the right of radius 1383.19 feet an arc distance of 700.00 feet, **thence still along the northeasterly line of the lands of said railroad**, N 56 deg. 48' 20" W 1226.96' to the point or place of beginning, containing 82.648 acres of land." <br><br> (Pls.' Ex. 70a). | |
| The Kosilla Family Irrevocable Trust: 132800-6357-04-724202-0000 | 49 | **"BEGINNING at a point on the Northerly exterior line of the New York, New Haven and Hartford Railroad Co.** at its intersection with the Easterly line of Helin Road and running along the line of said road North 43° 56' West 130.01 feet; thence along the, Southerly line of Flagler Road on a curve convex to the West having a radius of 27.30 feet and a length northerly 51.17 feet and thence North 63° 28' East 260.95 feet; thence leaving said road and running along lands of now or formerly K. Helin South 26° 32' East 155.74 feet **to the line of said railroad; thence along the exterior line of said railroad South 62° 35' 40" West 248.16 feet to the point of beginning containing one acre of land be the same more or less."** <br><br> (Pls.' Ex. 71a). | Rebutted, does not apply |
| Beth & Bruce Kraemer: 134089-6856-00-426641-0000 | 50 | "Town of Pawling, County of Dutchess and State of New York, **known and designated as Lot No. 10 on map entitled "Subdivision Plat of Willow Lake Estates, situate in the Town of Pawling, Dutchess County, New York" surveyed and prepared by Badey & Watson, L.S., dated January 26, 1977 and filed in the Office of the Clerk of the County of Dutchess on June 30, 1977 as Map No, 5183,** said lot being bounded and described according to said map as follows: BEGINNING at a point on the westerly side of Maria Drive where the same is intersected by the dividing line between Lot Nos. 9 and 10 on said map; THENCE: along the last said dividing line South 46° 00' 00" West 285.72 feet **to lands now or formerly of the New York, New Haven and Hartford Railroad.** | Applies |

| | | | |
|---|---|---|---|
| | | THENCE along the last said lands North 18° 30' 30" West 287.57 feet to the dividing line between Lot Nos. 10 and 11 on said map; THENCE along the last said dividing line North 68° 00' 00" East 247.40 feet to the westerly side of Maria Drive; and THENCE along the same South 22° 00' 00" East 180.00 feet to the point and place of BEGINNING."<br><br>(Pls.' Ex. 72a). | |
| Lank's Automotive, Inc.: 130200-6055-80-407023-0000 | 51 | "BEGINNING at the intersection of the Southeasterly line of Fishkill Ave with the Southwesterly line of lands of Shaw, and running thence with the Southeasterly line of Fishkill Avenue South-westerly one hundred thirty five (135) feet more or less **to the intersection of the Southeasterly line of Fishkill Ave with the Northeasterly line of the New York, New Haven, and Hartford Railroad Company, thence with said Railroad Company line Southeasterly thirty nine (39) feet more or less to a point fifty (50) feet distance North-westerly measured radially from the centerline of the New York, New Haven, and Hartford Railroad; thence with the Northwesterly line of the New York, New Haven, and Hartford Railroad Company on a curve to the left parallel with the centerline of said Railroad and fifty (50) feet distant therefrom** Northeasterly one hundred forty five (145) feet more or less to the line of lands of Shaw; thence with the line of lands of Shaw Northwesterly seventy one (71) feet more or less to the place of beginning."<br><br>(Pls.' Ex. 73a). | Rebutted, does not apply |
| Lara, LLC: 132800-6357-04-830320-0000 | 52a | "BEGINNING at a point on the southerly line of N.Y.S. Route 82, said point being the intersection of the southerly line of N.Y.S. Route 82 with the easterly line of lands now or formerly Farfaro (L. 1427 P. 605); thence along the easterly line of N.Y.S. Route 82, North 65-09-28 East 200.00 feet and North 63-25-21 East 72.15 feet to a point; thence along Parcel 1 as shown on said filed Map No. | Applies |

| | | | |
|---|---|---|---|
| | | 9175, South 45-43-42 East 561.43 feet **to a point; thence along lands now or formerly Consolidated Rail Corporation, South 59-50-28 West 226.12 feet to a point**; thence along lands now or formerly Farfaro (L. 1427 P. 605), North 49-18-05 West 596.88 feet to the point or place of beginning. Containing 3.10 acres of land more or less."<br><br>(Pls.' Ex. 74a). | |
| Lara, LLC: 132800-6357-04-844345-0000 | 52b | "BEGINNING at a point on the southerly line of N. Y. S. Route 82, said point being the intersection of the southerly line of N.Y.S. Route 82 with the easterly line of Parcel 2 as shown on said filed Map No. 9175; thence along the southerly line of N.Y.S. Route 82, North 63-25-21 East 65.34 feet and North 57-17-05 East 64.95 feet to a point; thence along lands nor or formerly Chianese and D'Angelico (L. 1393 P. 157), South 45-43-42 East 560.20 feet **to a point; thence along lands now or formerly Consolidated Rail Corporation, South 59-50-28 West 129.76 feet to a point**; thence along Parcel 2 as shown on said filed Map No. 9175, North 45-43-42 West 561.43 feet to the point or place of beginning. Containing 1.60 acres of land, more or less."<br><br>(Pls.' Ex. 74d). | Applies |
| Kathrym Lazar & Robert Schwartz: 132800-6356-01-428772-0000 | 53 | **"BEGINNING at the intersection of the southeasterly line of the New Haven Railroad with the southwesterly line of Fishkill Creek** at a point bearing North 42 deg. 56' East 850.7 feet from the westerly corner of lands of Nikkola (858 Deeds 322) running thence along Fishkill Creek Road South 83 deg. East 37 feet and North 42 deg. 56' East 281.7 feet to lands now or formerly of Rhodes; thence along said lands now or formerly Rhodes South 35 deg. 53' East 275.3 feet to the northerly corner of lands now or formerly of Berghollc: thence South 71 deg. 52' West 200 feet: thence South 72 deg. 14' West 258.1 feet to lands now or formerly of Warren running thence along said lands | Applies |

| | | | |
|---|---|---|---|
| | | now or formerly of said Warren, North 34 deg. 14' West 73.82 feet **to the railroad; running thence along said railroad North 42 deg. 56' East 133.64 feet to the point or place of beginning."**<br><br>(Pls.' Ex. 75a). | |
| Lia Brewster Realty, LLC 67.8-1-41 | 54a | "BEGINNING at an iron rod found which is located North 82°12' 10" West 279.85 feet and North 44°06'50" East 245.73 feet from the easterly corner of the premises above described; **Thence from said point of beginning as thus established, along northerly bounds of lands now or formerly of Midtown Trackage Ventures LLC. as described in Book 1277 of Deeds at Page 115 (formerly New York, New Haven and Hartford Railroad) North 82° 12' 10" West 286.50 feet** crossing the East Branch of Croton River to lands of the City of New York; Thence along the lands of the City of New York, North 36°09'00" East 62.63 feet, North 37°05'50" East 92.98 feet, North 40°27'00" East 133.63 feet, North ·40°24'30" East 112.60 feet, North 51°18'40" East 169.88 feet, North 66°19'00" East 41.63 feet and South 34°45'40" East 234.09 feet to lands now or formerly of R&R Development Corp. as described in Book 871 of Deeds at Page 95 (formerly O'Hare); Thence along the lands now or formerly of R&R Development Corp. as described in Book 871 of Deeds at Page 95 (formerly O'Hare), South 44°06'50" West, 392.26 feel to the point of beginning. **TOGETHER WITH an easement over the dirt drive leading from Parcel One to Parcel Two and crossing the lands of lands now or formerly of Midtown Trackage Ventures LLC.** as described in Book 1277 of Deeds at Page 115 (formerly New York, New Haven and Hartford Railroad), the centerline of said easement being described as follows: BEGINNING at a point on the northerly line of Parcel One which point is on a course North 82°12'10" West, 301.97 feet from the northwesterly side of State Highway No. 5098 | Applies |

| | | | |
|---|---|---|---|
| | | (Route No. 6 and Route No.22); Thence along the centerline of said right-of-way, North 27°00'46" East, 130.64 feet and No11h 37°24'19" East, 85.84 feet to a point on the southerly line of Parcel Two, which easement is ten feet in width on either side of the aforesaid centerline of the said right-of way. The aforesaid easement is for purposes of ingress and egress to and from Parcel Two herein before described."<br><br>(Pls.' Ex. 76a). | |
| Lia Brewster Realty, LLC: 67.36-2-6 | 54b | "ALL THAT CERTAIN PLOT, PIECE, OR PARCEL OF LAND, situate in the Village of Brewster, Town of Southeast, County of Putnam and State of New York, being bounded and described as follows: BEGINNING at a point on the northwesterly side of Route No. 6 and Route No. 22, also known as State Highway No. 5098, where the same is intersected by the northeasterly line of lands now or formerly of Ledley as described in Book 918 of Deeds at Page 29 (formerly O'Hare); . . . Thence along the lands of the City of New York, North 44°07' 10" East, 54.80 feet **to lands now or formerly of Midtown Trackage Ventures LLC. as described in Book 1277 of Deeds at Page 115 (formerly New York, New Haven and Hartford Railroad); Thence along the lands now or formerly of Midtown Trackage Ventures LLC as described in Book 1277 of Deeds at Page 115 (formerly New York, New Haven and Hartford Railroad)** and crossing the East Branch of the Croton River, South 82°12'10" East 527.36 feet to the northwesterly side of Route No.6 and Route No. 22; Thence along the northwesterly side of Route No.6 and Route No. 22, South 60°14'58" West, 353.02 feet to the point of beginning. Said parcel of land also being Lot Nos. 1 and 2 **as shown on a filed map entitled "Subdivision Plat of lands of Demarsico Pontiac, Inc.", filed in the Putnam County Clerk's office December 5, 1980 as Filed Map No. 1783."** | Applies |

| | | | |
|---|---|---|---|
| | | (Pls.' Ex. 76a). | |
| Lia Brewster Realty, LLC: 68.5-1-2 | 54c | "Beginning at a point on the Easterly side of Allview Avenue **where the same is intersected by the Southerly line of lands now or formerly of Metro North and the Northerly line of the parcel herein described, thence from said point of beginning along the Southerly line of lands now or formerly Metro North and the Northerly line of the parcel herein described S 82-42-50-E 687.98 to a point on a curve to the right, thence continuing along the Southerly line of lands now or formerly Metro North and the Northerly line of the parcel herein described along said curve to the right having a radius of 1096 78, a central angle of 3-43-39 and length of 71 35 to a point** in the Westerly line of lands of the People of the State of New York, AK/A Interstate Route 84, thence along the Westerly line of lands of the People of the State of New York, AK/A Interstate Route 84, . . . Containing with said bounds 13 903 Acres more or less."<br><br>(Pls.' Ex. 76g). | Rebutted, does not apply |
| 54d Lia Brewster Realty, LLC: 68.-1-4 | 54d | | |
| Lomala Land Development Corp.: 132800-6356-01-418813-0000 | 55 | "ALL that certain plot, piece or parcel of land situate, lying and being in the Town of East Fishkill, County of Dutchess, and State of New York being **known and designated as Lot 5-3 on a certain map entitled, "Subdivision Plat, Section 4 and Section 5, Prepared for Lomala Land Dev. Corp." dated 10/22/1981 and filed in the Dutchess County Clerk's Office on 10/30/1981 as Map No. 6240."**<br><br>(Pls.' Ex. 77a). | Applies |
| Lori Joseph Builders, Inc.: 133089-6055-15-649282-0000 | 56 | "BEGINNING at a point, on the southerly line of NYS Route 52, said point being the intersection of the southerly line of N.Y.S. Route 52 with the easterly line of land now or formerly Simmons, (Liber 2020 cp 298); . . . thence along the lends now or formerly Leake, South 27-02-33 East 69.79 feet, South 01-00- | Rebutted, does not apply |

| | | | |
|---|---|---|---|
| | | 35 East 34.62 feet, South 16-32-59 East 26.05 feet and South 18-00-56 East 103.27 feet **to a point; thence along the northerly line of the lands now or formerly Consolidated Rail Corp., on a curve to the left** having a radius of 1004.67 feet, a distance westerly of 207.99 feet, and along a curve to the left having a radius of 1034.14 feet, a distance westerly of 83.93 feet, thence along the lands now or formerly Simmons, (Liber 2020 cp 298), North 31-00-15 West 41.31 feet and North 28-05-30 West 77.53 feet to the point or place of BEGINNING."<br><br>(Pls.' Ex. 78a). | |
| Andrew & Carly Lynch-McGuire: 134089-6855-04-797401-0000 | 57 | "ALL that certain plot, piece or parcel of land, situate, lying and being in the Town of Pawling, County of Dutchess and State of New York, **known and designated as Lot No. 1 on a map entitled, "Subdivision Plat Prepared for Mark & Susan Tanner situate in Town of Pawling, County of Dutchess, State of New York, dated December 4, 1986, revised May 5, 1987" which map was filed in the Dutchess County Clerk's Office on August 14, 1987, as Map No. 8081** being more particularly bounded and described as follows: BEGINNING at a point on the easterly side of Herd and Tanner Road where the division line between Lot Nos. 1 and 2 on the aforementioned map intersect said easterly side of Herd and Tanner Road; RUNNING THENCE along said division line south 73 degrees 36 minutes 40 seconds east, 468.38 feet; **THENCE southerly along a curve to the left having a radius of 2,160.81 feet and an arc length of 362.55 feet**; THENCE north 83 degrees 15 minutes 35 seconds west, 155.17 feet; . . . ."<br><br>(Pls.' Ex. 79a). | Applies |
| John Madera & Susan Madera Irrevocable Trust: 13.-2-53 | 58 | "BEGINNING at a point on the southeasterly side of Baldwin Road where the same is intersected by the division line between lots numbers 17 and 18 as shown on the aforementioned map; Thence running along | Rebutted, does not apply |

| | | | |
|---|---|---|---|
| | | said division line South 63° 56' 00" East 661.76 feet **to the westerly boundary line of land now or formerly of New York, New Haven & Hartford RR; Thence running along the land of said Railroad South 06° 13' 10" West 320.00 feet to the centerline of a stone wall and the northerly boundary line of land now or formerly of Alberti;** Thence running partially along the centerline of said stone wall and along said land of Alberti the following courses and distances: . . ."<br><br>(Pls.' Ex. 80a). | |
| Emanuele Marinaro: 132800-6557-03-312108-0000 | 60 | "ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of East Fishkill, County of Dutchess and State of New York being **known and designated as Lot No. 4 as shown on map entitled "Subdivision Plan for LaPrima Subdivision" filed in the Dutchess County Clerk's Office on 3/24/03 as Map No. 11522.**"<br><br>(Pls.' Ex. 81a). | Applies |
| Frank Matteo & Rosa Carrasco: 132800-6357-04-746222-0000 | 61 | "ALL that certain plot, piece, or parcel of land situate, lying and being in the Town of East Fishkill, County of Dutchess and State of New York, being bounded and described as follows: **BEGINNING at a point on the northerly exterior line of the New York, New Haven and Hartford Railroad Co.** and distant North 62 degrees 35' 40" East 248.16 feet from its intersection with the easterly line of Helin Road and running thence along lands nor or formerly K. Helin North 26 degrees 32' West 155.74 feet to the southerly line of Flagler Road; thence along the line of said road North 63 degrees 28' East 283.00 feet; thence leaving said road and running along other lands of said K. Helin South 26 degrees 32' East 151.43 feet **to the northerly exterior line of said railroad; thence along the line of said railroad South 62 degrees 35' 40" West 283.03 feet to the point of beginning.**" | Rebutted, does not apply |

| | | | |
|---|---|---|---|
| | | (Pls.' Ex. 82a). | |
| Michael & Michelle McAllister: 132800-6357-04-818177-0000 | 62 | "ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of East Fishkill, County of Dutchess and State of New York, bounded and described as follows: **BEGINNING at a point on the southeasterly line of the Conrail Corporation, said point being at the intersection of the southeasterly side of said Conrail Corporation with the northeasterly line of Helin Road, running thence along the southeasterly line of said railroad North 62° 35' 40" East 748.68 feet to lands formerly of Husted**; THENCE South 27° 24' 20" East along said lands of Husted 151 feet to the center line of Fishkill Creek; . . ." <br><br> (Pls.' Ex. 83a). | Rebutted, does not apply |
| Lawrence & Christyanne Miano: 132800-6557-03-257180-0000 | 63 | "ALL that certain plot, piece or parcel of land situate, lying and being in the Town of East Fishkill, County of Dutchess and State of New York, being **designated as Lot No. 23 on a certain map entitled, "Johnson Estates, Section 1", made by Richard G. Barger, PE & LS, dated 4/18/1991, last revised 3/26/1992, and filed in the Office of the Dutchess County Clerk on 5/1/1992 as Filed Map No. 9470**, being bounded and described as follows: BEGINNING at a point on the southwesterly line of Woodcrest Drive, said point being the intersection of the southwesterly line of said Woodcrest Drive with the northwesterly line of lands of Lot No. 24 as shown on a certain map entitled "Johnson Estates, Section 1" and recorded in the Dutchess County Clerk's Office as Map No. 9470 and running thence along the northwesterly line of lands of said Lot No 24, South 36 degrees 50' 00" West 352.42 feet **to a point on the northeasterly line of lands of said Conrail Corp. thence leaving said line and running along the northeasterly line of lands of said Conrail Corp. 170.55 feet on a curve to the right having a radius of** | Rebutted, does not apply |

| | | |
|---|---|---|
| | | **2815.43 feet to a point; thence leaving said line** and running along the southeasterly line of lands of Lot No. 22, as shown on said Map No. 9470, North 25 degrees 40' 00" East 333.81 feet to a point on the southwesterly line of aforesaid Woodcrest Drive; . . . ." (Pls.' Ex. 84a). | |
| Gregory & Darlene Morrison: 134089-6856-00-452462-0000 | 64 | "ALL that certain plot, piece or parcel of land situate, lying and being in the Town of Pawling, County of Dutchess and State of New York, bounded and described as follows: **BEGINNING at a point on the northerly side of Route 292, State Highway 1163, where the same is intersected by the easterly line of New York New Haven & Hartford Railroad; RUNNING thence along said lands on a curve to the right having a radius of 1383.19 feet, an arc distance of 132.95 feet to the southerly side of Old Route 292.** RUNNING thence easterly along the same on a curve to the right having a radius of 180 feet an arc distance of 152.30 feet, South 36° East 139.90 feet and on a curve to the right having a radius of 180.00 feet an arc distance of 94.51 feet to Route 292; . . . ." (Pls.' Ex. 85a). | Applies |
| Douglas Mort: 134089-6856-00-616172-0000 | 65 | "BEGINNING at a point on the Westerly line of New York State Route 292, said point being an iron pin set in the Southeasterly corner of Lot No. 1 as shown on Filed Map No. 8727; . . . THENCE South 09° 17' 00" West 186.00 feet to an iron pin set in the Northerly line of Parcel C as shown on Filed Map No. 5440; THENCE along same North 87° 58' 50" West 556.67 feet **to an iron pipe found on the Easterly line of lands now or formerly of Consolidated Rail Corporation; THENCE on a curve to the left radius of 5779.15 feet central angle of 3-32-29 length of 357.20 feet to a point;** THENCE North 10° 10' 25" West 197.23 feet to a point on the Southerly line of Parcel 1 as shown on Filed Map No. 6533; THENCE following the mean | Rebutted, does not apply |

| | | | |
|---|---|---|---|
| | | centerline of a stonewall along said Parcel 1 North 84 ° 24' 40" East 70.11 feet; . . ."<br><br>(Pls.' Ex. 86a). | |
| Danny & Kimvalrie Neal: 134089-6856-00-444593-0000 | 66 | "ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Pawling, County of Dutchess and State of New York, known and designated as Lot No. 9 on map entitled, **Subdivision Plot of Willow Lake Estates, situate in the Town of Pawling, Dutchess County, New York"**, **surveyed and prepared by Badey & Watson, L.S. dated January 26, 1977 and filed in the office of the Clerk of the County of Dutchess on June 30, 1977 as Map No. 5183** more particularly bounded and described according to said map as follows: BEGINNING at a point at the southerly curve of a cul-de-sac of Maria Drive where the same is intersected by the division lines of lots 9 and 46 on said map; . . . THENCE still along lands of Weider South 59 degrees 27 minutes 30 seconds West 220.79 feet; **THENCE along a curve to the right having a radius of 1686.78 and along lands now or formerly of New York, New Haven & Hartford Railroad a length of 529.63 feet; THENCE North 18 degrees 30 minutes 30 seconds West and still along lands of New York, New Haven and Hartford Railroad a distance of 265.52 feet**; THENCE North 46 degrees 00 minutes 00 seconds East along the division line between lots 9 and 10 on said map a distance of 285.72 feet to the West side of Maria Drive; . . ."<br><br>(Pls.' Ex. 87a). | Applies |
| Philip Oliva: 132800-6557-03-309178-0000 | 67 | "BEGINNING at a point along the southerly line of Woodcrest Drive and said point being the intersection of the southerly line of Woodcrest Drive with the northeasterly corner of Lot No. 24 as shown on a certain map entitled "Johnson Estates, Section 1" and filed in the Dutchess County Clerk's Office as Filed Map No. 9470; thence in an easterly direction | Rebutted, does not apply |

| | | | |
|---|---|---|---|
| | | along the southerly line of Woodcrest Drive on a curve to the left with a radius of 325.00 feet and a length of 123.63 feet to the northwesterly corner of Lot No. 26 of the aforesaid flied map; thence in a southerly direction along the westerly line of Lot No. 26, South 10 deg 34' 14" East 418.81 feet **to a point along the northerly line of the lands of now or formerly Conrail Corporation; thence in a westerly direction along the northerly line of Conrail Corporation on a curve to the right with a radius of 2815.43 feet and a length of 278.00 feet to the southeasterly corner of the aforesaid Lot No. 24**; thence in a northerly direction along the easterly line of Lot No. 24, North 11 deg 13' 32" East 334.85 feet to the point of beginning. BEING KNOWN and **designated as Lot No. 25 on n certain map entitled "Johnson Estates, Section I" prepared by Richard G. Barger, P.E. and L.S. filed in the Dutchess County Clerk's Office on May 1, 1992 as Filed Map No. 9470."**<br><br>(Pls.' Ex. 88a). | |
| David Otero: 13.-2-49 | 68 | "ALL that certain plot, piece or parcel of land, situate, lying and being in the Town of Patterson, County of Putnam, State of New York, **shown and designated as Lot No. 14 on a certain map entitled, "Map One, Mooney Hill Estates, situate in the Town of Patterson, Putnam County, New York", made by Emest Martin, Wappinger Falls, New York, which said map was filed in the ·Putnam County Clerk's Office on March 22, 1961 as Map No. 908."**<br><br>(Pls.' Ex. 89a). | Applies |
| Partners Management, LLC: 68.5-2-24 | 69 | "ALL that certain plot, piece or parcel of land, situate in the Town of Southeast, County of Putnam and State of New York, and described as follows: **On the south: by the taking line of the Penn-Central Railroad**; On the north: by the road line of Old Route 6, now known as Argonne Road, being a strip of land about 800 feet long." | Applies |

| | | |
|---|---|---|
| | | (Pls.' Ex. 90a). | |
| Donato Pozzuto: 132200-6757-00-500533-0000 | 70a | "Parcel II All that certain plot, piece or parcel of land, situate, lying and being tile Town of Beekman, County of Dutchess and State of New York being known and designated as lot Number 3 on a certain map entitled, "Subdivision Plat prepared for Sandford" dated September 4, 2003 and last revised November 25, 2003 made by Harry J. Bly, Licensed Land Surveyor and filed in the Dutchess County Clerk's Office on April 22, 2004 as Map Number 11679, being more particularly bounded and described herein as follows. Parcel II **BEGINNING at a point said being the intersection formed by the division line between lot 3 on the aforesaid map with the lands now or formerly of Metro North Commuter Railroad Company, as shown in Liber 2015 page 333**; said point also being the northerly corner of Lot 3 on the aforesaid map, Running thence along the division line between the easterly side of Lot 3 and the westerly side of the lands now or formerly of Frog Hollow, LLC, the following seven (7) courses and distances. . . . Running thence along the division line of Lot 3 on the aforesaid Map and the lands now or formerly of Lydia R. Doyle and continuing along the division line of Lot 3 on the aforesaid Map and the lands now or formerly | Rebutted, does not apply |
| Donato Pozzuto 132200-6757-00-563722-0000 | 70b | of Condon P. Bennett, as shown in deed document number 2000-9635, North 57°36'19" West a distance of 1,145.26 feet **to the lands now or formerly of Metro North Commuter Railroad Company, as shown in Liber 1956 Page 339, Running thence along the division line between Lot 3 on the aforesaid Map and the lands now or formerly of Metro North Commuter Railroad Company the following courses and distances**; 1. North 46°32'16" East a distance of 194.41 feet, 2. South 43°27'44" East a distance of 50.00 feet, 3. North 46°32'16" East a distance of 1945.00 feet, 4. North 43°27'44' West a distance of 50.00 feet, | |

| | | | |
|---|---|---|---|
| | | 5. North 46°32'16" East a distance of 85.28 feet, 6. Northerly on a curve to the right having a radius of 5,680.15 feet a distance of 501.47 feet, 7. North 51°35'46" East a distance of 691.38 feet to the point or place of BEGINNING."<br><br>(Pls.' Ex. 91a). | |
| Donato & Carmelina Pozzuto: 132200-6757-00-445645-0000 | 71 | "ALL that certain plot, piece or parcel of land, situate, lying and being the Town of Beekman, County of Dutchess and State of New Yark being **known and designated as Lot Number 2 on a certain map entitled, "Subdivision Plat prepared for Sandford" dated September 4, 2003 and last revised November 25, 2003 made by Harry J. Bly, Licensed Land Surveyor and filed in the Dutchess County Clerk's Office on April 22, 2004 as Map Number 11679**, being more particularly bounded and described as follows: Parcel I Beginning at a point on the westerly side of Frog Hollow Road, where same is intersected by the division line between Lot 2 and Lot l on the aforesaid Map. . . . Running thence South 18° 57' 15" West a distance, if 224.02 feet to a point, Running thence South 51° 35' 46" West a distance of 359.00 feet **to the division line between Lot 2 on the aforesaid Map and the lands now or formerly of Metro North Commuter Railroad Company, as shown in Liber 1956 page 339, Running thence along said division line between Lot 2 on the aforesaid Map and the lands now or formerly of Metro North Commuter Railroad Company the following six (6) courses and distances**, 1. South 51° 35' 46" West a distance of 123.89 feet, 2. Southerly on a curve to the left with a radius of 5829.15 feet a distance of 514.62 feet, 3. South 46° 32' 16" West a distance of 50.28 feet, 4. South 43° 27' 44" East a distance of 50.00 feet, 5. South 46° 32' 16" West a distance of 1983.50 feet, 6. Southerly on a curve to the right with a radius of 1383.19 feet a distance of 217.58 feet, to the division line between Lot 2 on the | Rebutted, does not apply |

| | | | |
|---|---|---|---|
| | | aforesaid Map and the lands now or formerly of Walter S. Klein and Jenette B. Klein, as shown In Liber 1221 page 515, . . ." <br><br> (Pls.' Ex. 92a). | |
| John Read: 134089-6855-02-812527-0000 | 72 | "Beginning at a point at the end of a stone wall, said point being the assumed westerly line of New York State Route 292, said point also being the northerly line of lands now or formerly of Holmes Methodist Church, Liber 1005 page 364, recorded in the office of the Dutchess County Clerk; Thence following the northerly line of the Holmes Methodist Church partially along a stone wall, South 83° 50' 00" West 392.65 feet **to the intersection of a wire fence and the easterly line of lands now or formerly of Penn Central Railroad Company; Thence along said lands and the remains of a wire fence North 06° 45' 00" West 433.00 feet to the southwesterly corner of lands now or formerly of Yerks**, Liber 1349 page 380, recorded in the office of the Dutchess County Clerk; Thence following the southerly line of lands now or formerly of Yerks, North 50° 10' 00" East 115.00 feet, South 83° 15' 00 East 71.28 feet North 44° 00' 00" East 25.78 feet to a point in the assumed westerly line of Route 292; . . ." <br><br> (Pls.' Ex. 93a). | Applies |
| Levi Harold Reavey, Sr.: 133089-6055-16-783251-0000 | 73 | "BEGINNING at a point on the northerly line of Washington Avenue said point being the intersection of the northerly line of Washington Avenue with the westerly lines of lands now or formerly Texaco; thence along the northerly line of Washington Avenue, South 86 degrees 45 minutes 00 seconds West 83.00 feet to a point; thence along lands now or formerly of Pendleton (Liber 635 cp 505), North 10 degrees 05 minutes 00 seconds West 156.75 feet **to a point; thence along lands now or formerly Consolidated Rail Corp. on a curve to the right having a radius of 1104.70 for a distance of 154.96 feet to a point**; thence along the westerly line of lands now or formerly Texaco, South 12 degrees 40 | Applies |

47

| | | | |
|---|---|---|---|
| | | minutes 00 seconds West 187.00 feet to the point beginning."<br><br>(Pls.' Ex. 94a). | |
| John & Christine Reda: 134089-6856-00-656115-0000 | 74 | "BEGINNING at point or the westerly side of NYS Route 292 at the southeast corner of the lands of Frank Healey formerly the lands of Claude McArthur and Isabelle B McArthur, his wife, running from said point of beginning North 84° 25' 42" West 465 feet to a point; **running thence, North 73° 57' 18" West 485.66 feet to a point along the right of way of the New York, New Haven and Hartford Railroad; running thence, South 2° 13' 40" West 23.75 feet to a point; thence running South 1° 30' 40" West 301.76 feet to a 1 1/2 inch iron pipe and the southeasterly corner of the lands described herein** and the northerly boundary line of the lands now or formerly of Higgs; running thence along the lands now or formerly of the Higgs, South 87° 02' 10" East 909.14 feet to a point on the westerly side of NYS Route 292; thence running along NYS Route 292 North 3° 38' 40" West 154.80 feet to a point and thence, North 4° 19' 20" West 38.71 feet along the remains of a fence to the point or place of beginning."<br><br>(Pls.' Ex. 95a). | Applies |
| Catherine & Michael Roberts: 134089-6855-02-727762-0000 | 75 | "ALL that certain tract or parcel of land situate in the Town of Pawling, County of Dutchess and State of New York, bounded and described as follows: . . . **THENCE along the Easterly line of lands now or formerly Consolidated Rail Corporation North 16 degrees 33' 00" West 525.02 feet to a point**; THENCE along the Southerly and Westerly lines of lands now or formerly Pierce (Liber 1223 cp 113), the following two courses: . . . ."<br><br>(Pls.' Ex. 96a). | Rebutted, does not apply |
| David & Judith Rochman: 134089- | 76 | "BEGINNING at a point on the east side of the town highway leading from Holmes to Whaley Lake, said point being on the | Rebutted, does not apply |

| | | | |
|---|---|---|---|
| 6855-00-617782-000 | | northwest corner of the Abel B. Cole property, . . . THENCE northerly in company with said highway about 1300 ft. to the southwest corner point of the property now owned by Jack Lake, **THENCE easterly in company with the said Lake property to a point in the west side of the N. Y. N. H. & Hartford Railroad line, THENCE southerly in company with said railroad to the northeast corner point of tile said Abel Cole property,** THENCE westerly in company with said Cole property to the point or place of BEGINNING."<br><br>(Pls.' Ex. 97a). | |
| Cindy & Louis Russo: 132800-6357-04-948366-0000 | 77 | "All that certain plot, piece, or parcel of land , with the buildings and improvements there erected, situate, lying, and being in the Town of East Fishkill, in the County of Dutchess and State of New York, **known as Lot No. 19, as shown on a Map entitled "Shadowbrook Estates, Subdivision Plat for Herbert Stencer", and filed in Dutchess County Clerk's Office as Map # 5055,**"<br><br>(Pls.' Ex. 98a). | Applies |
| Daniel & Shana Sciarabba: 132800-6557-03-344139-0000 | 78 | "ALL that certain plot piece or parcel of land, situate, lying and being in the Town of East Fishkill, County of Dutchess, and State of New York, **known and designated as Lot No. 5, as shown on a Map entitled, "Subdivision Plan for Walton Realty, Inc.", filed in the Dutchess County Clerk's Office on September 21, 1999 and filed Map No. 10874,** bounded and described as follows: BEGINNING at a point on the northerly side of the cul-de-sac of Falcon Crest Court, where the same is intersected by the division line between Lot Nos. 4 and 5 as shown on the above mentioned Map; RUNNING THENCE along the last mentioned division line, North 40 degrees 50 minutes 13 seconds West 472.10 feet to a point; **THENCE along the northerly line of the premises herein described and lands now or formerly of Con Rail Corp., South 72 degrees 14** | Applies |

| | | | |
|---|---|---|---|
| | | **minutes 00 seconds East 112.06 feet South 76 degrees 13 minutes 00 seconds East 223.37 feet to the division line between Lot Nos. 5 and 6 as shown on the above mentioned Map;** THENCE along the last mentioned division line, South 09 degrees 31 minutes 38 seconds East 225.00 feet to the northerly line of the cul-de-sac of Falcon Crest Court; . . . ."<br><br>(Pls.' Ex. 99a). | |
| Scotton Living Trust: 13.-2-88 | 79 | "All that certain plot, piece, or parcel of land , with the buildings and improvements there erected, situate, lying, and being in the Town of Patterson, County of Putnam and State of New York, **known and designated as Lot No. 43 on a certain map entitled, "Final Subdivision Plat O'Hara Subdivision Section II, Town of Patterson, Putnam Co., N.Y." dated April 27, 1990 and filed in the Office of the County Clerk of Putnam on September 25, 1992 as Map No. 2360-B."**<br><br>(Pls.' Ex. 100a). | Applies |
| Rena Shiwdin: 132800-6557-03-167150-0000 | 80 | "ALL that certain plot, piece, or parcel of land, with the building and improvements thereon erected, situate, lying and being in the Town of East Fishkill, County of Dutchess, and State of New York, being in addition to the parcel being **known and designated as Lot Number 2 as shown on a certain map entitled, "Subdivision for McAliney", dated 12/08/1981 and filed in the Dutchess County Clerk's Office on 03-15-1982 as Filed Map No. 6336**, being bounded and more particularly described as follows: Beginning at a point on the northerly Right of Way (R.O.W.) line of Prentiss Drive, said point also being the southeasterly corner of Lot 1 as shown on said map, and the True Point of Beginning: THENCE leaving said R.O.W. line and running along the division line between the lands now or formerly of Anthony J. Cannizzaro as described in Liber 22008 at Page 2224 of Deeds, aka Lot 1 as shown on said map and the parcel herein | Applies |

| | | | |
|---|---|---|---|
| | | described the following two (2) courses and distances: . . . THENCE leaving said division line and **running along the division line between the lands now or formerly of Metro-North Commuter Railroad Company as described in Liber 22009 at Page 1705 of Deeds and the parcel herein described the following five (5) courses and distances:** 4) S 52° 48' 44" E a distance of 367.10 feet to a point; 5) S 54° 44' 44" E a distance of 162.10 feet to a point; 6) S 57° 56' 44" E a distance of 104.20 feet to a point; 7) S 60' 58' 42" E a distance of 253.00 feet to a point; 8) S 62' 08' 42" E a distance of 109.21 feet to a point on the westerly Right of Way (R.O.W.) line of Carpenter Road; THENCE leaving said division line and running along said R.O.W. line the following course and distance along a non-tangent curve turning to the left with an arc length of 86.07 feet, a radius of 200.21 feet, a chord bearing of S 08° 34' 18" W, and a chord length of 85.41 feet, to a point; . . . ."<br><br>(Pls.' Ex. 101a). | |
| Patricia Slesarchick: 132800-6357-04-866357-0000 | 81 | "ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of East Fishkill. County of Dutchess and State of New York, **known and designated as Lot #2 on a certain map entitled "Subdivision Plat of Lands of Antonietta Zago" made by Charles J Miller, Jr., LS., dated February 15th, 1974 and recorded in the Dutchess County Clerk's Office on April 16th, 1974, as Map #4369.** BEGINNING at a point on the southerly line of N.Y.S. Route 82 said point being the intersection of the southerly line of N.Y.S Route 82 with the easterly line of lands now or formerly Zago & D'Rngelico (L. 604 P. 363); . . . thence along lands now or formerly Doughty, South 57-25-00 East 364.98 feet **to a point; thence along lands now or formerly Consolidated Rail Corporation, South 59-50-28 West 410.13 feet to a point;** thence along lands now or | Applies |

| | | | |
|---|---|---|---|
| | | formerly Zago & D'Angelico (L. 604 P. 363), North 45-43-42 West 560.20 feet to the point or place of beginning." (Pls.' Ex. 102a). | |
| Sarah & Peter Sobek: 132800-6356-01-347640-0000 | 82 | "ALL that certain plot, piece or parcel of land, situate, lying and being in the Town of East Fishkill, County of Dutchess and State of New York, bounded and described as follows: **BEGINNING on the southeast line of the New Haven Railroad and on the easterly bank of Sprout Creek opposite the northeasterly corner of lands or Forsblom (858 Deeds, page 252), and RUNNING THENCE northeasterly along the railroad to a stake 422.00 feet, more or less measured to a straight line from the beginning point;** THENCE along the westerly line of Bronx Drive, South 19 degrees 31' East 96.93 feet and continuing on the same course, 233.47 feet to a stone wall; . . ." (Pls.' Ex. 103a). | Rebutted, does not apply |
| Tara Holdings, LLC: 68.-2-20 | 83 | "BEGINNING at a point on the northerly side of Old Route 6 at a Big Tree Stump distant 500 ft. more or less, westerly of Old Joe's Hill Road as described as a Big Tree in a certain deed from Mildred C. Nere to Donald P. Mossman, Jr. dated October 20, 1952 as recorded in the Putnam County Clerk's Office November 7, 1952 in Liber 418 of Deeds page 532; . . . THENCE along westerly side of Joe's Hill Road and the easterly face of a stone wall North 28 degrees 40 minutes 10 seconds East 12.30 feet North 7 degrees 34 minutes 50 seconds West 38.58 feet North 18 degrees 26 minutes 20 seconds West 46.70 feet, North 9 degrees 02 minutes 20 seconds West 35.66 feet and North 13 degrees 18 minutes 40 seconds East 27.80 feet to the end of a stone wall, continuing still along westerly side of Joe's Hill Road North 1 degree 04 minutes 20 seconds East 41.10 feet **to lands now or formerly of Central New England-Railway Co., THENCE along said land North 87** | Applies |

| | | | |
|---|---|---|---|
| | | **degrees 57 minutes 30 seconds west 446.29 feet to a point** and lands now or formerly of D.P. Mossman Inc. said point being 1110.81 feet South 89 degrees 18 minutes 10 seconds East from a stone monument in the northwest comer of lands of D.P. Mossman Inc. and the northeast comer of lands of the City of New York; . . . ."<br><br>(Pls.' Ex. 104a). | |
| Kevin Thacke & Sandra Genaro: 132800-6457-04-931330-0000 | 84 | "ALL that certain plot, piece or parcel of land situate, lying, and being in the Town of East Fishkill, County of Dutchess and State of New York, being **known and designated as Lot 26 on a certain map entitled, "Lake Vistas Section 3", which said map was filed in the Office of the Clerk of the County of Dutchess on June 23, 1983 as Map No 8424**, which said lot is more particularly bounded and described as follows BEGINNING at a point on the turning circle at the end of Darci Drive, intersects the division line between Lots 27 and 26 on said map, . . . THENCE running along the southerly line of lands now or formerly said Underhill Estate, North 66 degrees 39 minutes 00 seconds East 532.64 feet **to a point on the southwesterly line of lands of N Y N H and H Railroad, THENCE running along the southwesterly line of lands of said N Y N H and H Railroad, South 38 degrees 51 minutes 20 seconds East 285.00 feet to a point,** THENCE running along division line between Lots 27 and 26 as shown on said map, South 66 degrees 54 minutes 10 seconds West 843.67 feet to the point of BEGINNING."<br><br>(Pls.' Ex. 105a). | Rebutted, does not apply |
| Ugolini Family Trust: 133089-6155-11-567655-0000 | 85 | "Beginning at a point in the Southerly line of Kipp Avenue at the Northeasterly corner of other lands of parties of the second part hereto and running thence with said other lands of parties of the second part hereto the following courses and distances South four degrees, thirty four minutes East one hundred twenty five feet; . . . thence South fifty seven degrees | Applies |

| | | | |
|---|---|---|---|
| | | twenty four minutes West five hundred twenty six and forty one hundredths feet; thence South twenty degrees nineteen minutes West three hundred eighty four and eight tenths feet **to lands of the New York New Haven and Hartford R.R. Co.; thence with said Railroad Company lands North sixty four degrees twenty one minutes East one thousand six hundred eighty three feet** thence with other lands of Ketcham North twelve degrees sixteen minutes West one hundred forty six and three tenths feet to the Southerly line of Kipp Avenue aforesaid and thence with the said Southerly line of Kipp Avenue South eighty eight degrees thirty four minutes West eighty five feet to the place of beginning." <br><br>(Pls.' Ex. 106a). | |
| Leonard Vann: 132800-6356-01-388755-0000 | 86 | "ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AND BEING IN THE TOWN OF EAST FISHKILL, COUNTY OF DUTCHESS, STATE OF NEW YORK, BEING **KNOWN AS LOT NO. 4-3 ON A MAP ENTITLED "SUBDIVISION PLAT, SECTION 4 AND SECTION 5, LOMALA LAND DEVELOPMENT CORP." FILED WITH THE DUTCHESS COUNTY CLERK'S OFFICE ON OCTOBER 30, 1981, AS MAP #6240.**" <br><br>(Pls.' Ex. 107a). | Applies |
| John J. Volkmann, Sr. & Irene M. Volkmann Irrevocable Trust: 132800-6357-04-791263-0000 | 87 | "ALL that parcel of land in the Town of East Fishkill, County of Dutchess, State of New York and described as follows: **BEGINNING at a point on the Northerly exterior line of the New York, New Haven and Hartford Railroad Co.** and distant North 62° 35' 40" East 823.22 feet from its intersection with the Easterly line of Helin Road and running along lands of nor or formerly K. Helin North 26° 32' West 146.99 feet to the Southerly line of Flagler Road; thence along the line of said | Rebutted, does not apply |

| | | | |
|---|---|---|---|
| | | road North 63° 28' East 285.00 feet; **thence along a right-of-way South 35° 35' East 144.22 feet to the Northerly exterior line of said railroad; thence along the line of said railroad South 62° 35' 40" West 308.55 feet to the point of beginning containing one acre of land be the same more or less."** <br><br> (Pls.' 108a). | |
| William & Angela Volpe: 132800-6356-02-511917-0000 | 88 | "ALL, that certain plot, piece or parcel of land situate, lying and being in the Town of East Fishkill, County of Dutchess and State of New York, being **designated as Lot No. 3 on a certain map entitled, "Section 2 of Lomala Land Development Corp." prepared by Ernst Martin, L.S. and filed 3/16/1973 in the Office of the Dutchess County Clerk as Filed Map No. 4087."** <br><br> (Pls.' Ex. 109a). | Applies |
| Joseph & Marilyn Walsh: 132800-6356-02-506889-0000 | 89 | "ALL, that certain plot, piece or parcel of land situate, lying and being in the Town of East Fishkill, County of Dutchess and State of New York, being **designated as Lot No. 5 on a certain map entitled, "Section 2 of Lomala Land Development Corp." dated July 20, 1971, made by Ernst Martin, L.S. and filed in the Dutchess County Clerk's Office on March 16, 1973 as Map #4087."** <br><br> (Pls.' Ex. 110a). | Applies |
| Karen & Richard Warren: 132800-6356-01-415742-0000 | 90 | "BEGINNING at the Northerly line of Brooklyn Drive at the Southeasterly corner of lands of Kahara and running thence along the line of said Kahara North 17 deg. 00' West 162.00 feet; thence along the line of lands of now or formerly Hughes North 18 deg, 10' West 285.20 feet **to the Southerly exterior line of formerly the Dutchess and Columbia Railroad Co., now the Penn-Central; thence along said line North 42 deg. 56' East 143. 76 feet; thence along the line of lands of now or formerly Langi, . . ."** <br><br> (Pls.' Ex. 111a). | Rebutted, does not apply |

| | | | |
|---|---|---|---|
| Whitefield Properties, LLC: 130200-6055-72-498177-0000 | 91 | "BEGINNING at the intersection of the Northwesterly line of Fishkill Avenue with the Southwesterly line of State Street and running thence **with the said Northwesterly line of Fishkill Avenue South fifty seven (57) degrees ten (10) minutes West one hundred and one hundredths (100.01) feet**; THENCE with other lands of parties of the first part (Eraca) the following courses and distances: North thirty-one (31) degrees fifty-nine (59) minutes West ninety-eight and fifty-eight hundredths (98.58) feet; . . . ."<br><br>(Pls.' Ex. 112a) | Rebutted, does not apply |
| Karen & Richard Woolcott & Catherine Josset: 67.8-1-1 | 92 | "BEGINNING at a point on the westerly side of Peaceable Hill Road, said point being the Intersection of the dividing line between premises herein and lands now or formerly of Tombline more fully described in Liber 754 page 220; Running thence along lands now or formerly of Tombline North 89° 57' 00" West 269.29 foot **to a point on the easterly line of lands now or formerly of New York New Haven & Hartford Railroad more fully described in Liber 94 page 520**, said point being distant the following courses and distances: From a 40 wide deeded to the Town of Southeast in liber 640 page 376; South 30° 20' 40" East 34.86 feet to a point of curve; **thence on a curve to the left having a radius of 1063.78 feet a central angle of 25° 00' 23" a distance of 464.28 feet; running thence from said point along the easterly line of lands of New York / New Haven & Hartford Railroad Co. South 9° 21' 00" West 36.38 feet to a point on the northerly line of lands now or formerly of The Boston/Hartford & Erie Railroad Co. more fully shown on Putnam County Filed Map No. 37**: . . . ."<br><br>(Pls.' Ex. 113a). | Rebutted, does not apply |
| Stanley Zmudzinski: 132800-6356-02-522936-0000 | 93 | "ALL, that certain plot, piece or parcel of land situate, lying and being in the TOWN OF EAST FISHKILL, County of Dutchess and State of New York, and **being more** | Applies |

| | | | |
|---|---|---|---|
| | | particularly described as Lot #2 on a map entitled "Section 2 of Lomala Land Development Corp." prepared by Ernst Martin, L.S. and filed in the Dutchess County Clerk's Office on March 16th, 1973, as Map No. 4087." <br><br>(Pls.' Ex. 114a). | |
| MXYZPTLK-NY LLC: 134089-6855-04-716373-0000 | 94 | "ALL that certain plot, piece or parcel of land situate, lying and being in the Town of Pawling, Dutchess County, Town of Kent, Putnam County, and State of New York, also being **shown as Lot 1 on a map entitled "Lot Line Re-Alignment Map of Property prepared for Harold H. Herd and Mark and Susan Tanner' filed in the Dutchess county Clerk's Office as Filed Map No. 10206** on February 16, 1996 is more particularly bounded and described as follows: BEGINNING at a point on the southerly bounds of Holmes Road **at the westerly bounds of the New Haven-Hartford Railroad, said point being the northeast corner of the herein described parcel; thence running southerly along the westerly bounds of the New Haven Railroad, the following 3 courses**: 1) South 04° 24' 18" East 94.45 feet, 2) South 13° 40' 18" West 157.24 feet and 3) South 04° 10' 22" East 419.22 feet to a point in a stonewall**; thence running westerly along said stonewall and still along the New Haven-Hartford Railroad, in part, and the lands of Tanner (Deed Liber 1762 Cp. 133 - Lot 2 FM# 8081), South 85° 56' 18" West 160.09 feet to a stone wall corner,** thence continuing along said stonewall and the westerly bounds of Tanner and Tanner (Doc #02-2014- 2010- Lot 1 FM# 8081), the following 4 courses: . . ." <br><br>(Pls.' Ex. 115a). | Rebutted, does not apply |
| Neil Kavey & Madelon O'Shea: 132200-6858-00-051337-0000 | 95 | "ALL that certain plot, piece or parcel of land, with the building, and improvements thereon erected, situate, lying and being in the Town of Beekman, County of Dutchess and State of | Rebutted, does not apply |

| | | | |
|---|---|---|---|
| | | New York, **being all of the property of Kenneth Ives shown on 3 survey or map made by John Ogden, Surveyor, which said map or survey is dated November 1929 and entitled "Property of Kenneth Ives, Town of Beekman, Dutchess, County, N.Y. area 120.13 acres excluding Railroad and State Highway"**, and more particularly bounded and described, according to said map as follows: BEGINNING at some stones on a rock at the corner of lands of one B.T. Innes thence along the lands of the said Innes the following courses and distances; North 84° 25' west 218 feet; North 79° 50' west 115 feet; North 84° west 285 feet south 88° west 91 feet; North 75° 20' west 76 feet; . . . thence continuing along the lands of one H.B. Ward; South 6° west 443 feet; thence continuing along the lands of one C. Mills, South 3° 15' west 575 feet, thence along the lands of one B. T. Innes, South 5° 15' west 615 feet to the place of beginning. **Excepting from the above and foregoing lands the right of way of the New York, New Haven and Hartford Railroad."**<br><br>(Pls.' Ex. 116a). | |
| Joanna Osborne: 134089-6856-00-578245-0000 | 96 | "TOWN OF PAWLING, County of Dutchess and State of New York, **shown and designated as Parcel 1 on a certain map entitled, "Subdivision Plat Prepared for Rosenbaum", dated January 11, 1983 and filed in the Dutchess County Clerk's Office on January 21, 1983 as Map No. 6533."**<br><br>(Pls.' Ex. 117a). | Applies |

### 3.    The Maybrook Trail

The United States also moves for summary judgment on the basis that several Plaintiffs are unable to establish both causation and just compensation due to the existence of the "Maybrook Trail."[5] (Def.'s Mot. at 18–22). The Maybrook Trail, which runs along several of the subject properties to this litigation, was opened in 2020 (predating the NITU), and is currently being utilized as a pedestrian walking and biking trail. (*Id.* at 19; Pls.' Reply at 13 ("It is not disputed that there is a trail on part of the corridor that is subject to the NITU.")). First, the United States posits that the Group D Plaintiffs cannot establish causation, because the Maybrook Trail makes it impossible for Plaintiffs to prove "that the STB's NITU has taken something from the Group D



Image of the Maybrook Trail (Def.'s Mot., Ex. 2 at 13, ECF No. 45-2)

landowners . . . [as the] pre-existing use of the railroad corridor for walking and biking" would continue even in the NITU's absence. (Def.'s Mot. at 20). Second, the United States argues that Plaintiffs are unable to meet their burden of proof on the element of just compensation. (*Id.* at 20–22).

### i.    <u>Causation</u>

For its causation argument, the United States first points to *Caquelin*. (Def.'s Mot. at 19). The *Caquelin* court held that "a NITU does not effect a taking if, even in the absence of a NITU, the railroad would not have abandoned its line (a necessary prerequisite for termination of the easement under state law) during the period of the NITU." *Caquelin*, 959 F.3d. at 1363. This is because, in such circumstances "the NITU takes nothing from the landowner that the landowner would have had in the absence of the NITU." *Id.* Relying on this principle, the United States argues that "there can be no taking if the Plaintiffs would never have their land back unencumbered by a trail but for the NITU[.]" (Def.'s Mot. at 19–20). However, the land's current encumbrance by the Maybrook Trail does not constitute evidence that the Railroad would not, in fact, have abandoned its line absent the NITU. Instead, the Court must consider a variety of factors to properly discern the Railroad's intent. *See Sauer West*, 151 F.4th at 1346.

Pursuant to the Trails Act, the "railbanking" process typically begins when the rail carrier files either an abandonment application or a request for an exemption with the STB. *Caldwell v.*

---

[5] The United States asserts this argument for fifty-five (55) of the claims in this matter ("Group D"). (*See* Def.'s Ex. 2, ECF No. 45-2).

*United States*, 391 F.3d 1226, 1229 (Fed. Cir. 2004) (citing 49 U.S.C. §§ 10903, 10502). Upon the STB's approval and publication of the notice of exemption, any potential trail operator can file a railbanking petition which must include: "(1) a map of the right-of-way, (2) a statement indicating that the trail operator will assume financial and legal liability for the right-of-way, and (3) an acknowledgement that the right-of-way may be reactivated for railroad use in the future." *Id.* (citing 49 C.F.R. § 1152.29(a)). Assuming the petition meets the proper criteria, and the railroad agrees to negotiate with the petitioner, the STB will issue a NITU which permits the railroad "discontinue service, cancel tariffs, and salvage track and other equipment . . . without consummating abandonment[.]" *Id.* A taking is accomplished when the NITU blocks state law reversionary property interest that would otherwise take effect pursuant to normal abandonment proceedings. *Caquelin*, 959 F.3d at 1363 (citing *Caldwell*, 391 F.3d at 1236). When no trail use agreement has been reached, but the NITU compels the railroad to delay its abandonment, the issuance of a NITU may effect a temporary physical taking. *Ladd*, 630 F.3d at 1023–24. In the absence of a trail use agreement, it must be clearly shown that the railroad intended to abandon its lines during the NITU period but was prevented from doing so by the existence of the NITU. *Memmer*, 50 F.4th at 145.

In order reach the question of whether Plaintiffs here have established causation, the Court must first determine the proper analytical framework as set forth by the Federal Circuit. A NITU alone is not sufficient to establish that the government has caused a taking; the Court should take a totality of the circumstances approach to discern "whether [the railroad] would have consummated abandonment in the absence of the NITU." *Sauer West*, 151 F.4th at 1346. In *Sauer West*, the Circuit discussed many different factors that the Court could consider when seeking to discern the railroad's intent; these factors included things such as: (1) the railroad's request to abandon the line; (2) refusing to consent to an extension of the NITU; (3) abandonment of the line within months of the NITU's expiration; (4) whether the NITU authorized track removal during the NITU period; and (5) whether the railroad did in fact remove tracks. *Id.* (citing *Caquelin*, 959 F.3d at 1373; *Memmer*, 50 F.4th at 145 (comparing different factors considered in *Caquelin* and *Memmer*)). The Circuit, however, pointed out how the Court in *Sauer West* considered factors beyond those listed in *Caquelin*, including: (1) six one-year extensions to negotiate the trails agreement; (2) improvements to the Line; (3) no removal of tracks; (4) railcar storage on the line; (5) negotiations with other parties to reopen the Line; and (6) the eventual decision not to abandon. *Id.* (citing *Sauer West v. United States*, 168 Fed. Cl. 49, 68 (2023) (finding plaintiffs had not demonstrated that the railroad would have abandoned the line and therefore failed to establish causation)).

Notably, none of these cases state that a plaintiff is unable to recover damages due to their land being encumbered by a trail that pre-existed the NITU. The Circuit's focus has always been on the NITU's issuance and, in the absence of a trail use agreement, the railroad's intent, or lack thereof, to abandon the rail line. For these reasons, the Court does not find the United States' arguments persuasive, as they appear to suggest that real-world conditions—namely, the Maybrook Trail—eliminate the need to apply the totality-of-the-circumstances approach articulated by the Circuit. The United States' reliance on *Loveridge* only heightens the Court's concerns with its position.

The United States contends that the "real-world conditions" of this case are comparable to the circumstances in *Loveridge*. (Def.'s Mot. at 19 (citing *Loveridge v. United States*, 174 Fed.

Cl. 379, 389–90 (2024) ("*Loveridge*"), *appeal docketed*, No. 25-1244 (Fed. Cir. Dec. 4, 2024))). Specifically, the United States argues that "[t]he construction of and continued maintenance of the Maybrook Trail is inconsistent with an intent to abandon MNR's property rights in this corridor." (*Id.* at 20). To start, the United States' suggestion that MNR's "construction and continued maintenance" of the Maybrook Trail is somehow indicative of MNR's intent not to abandon the rail line is simply illogical. (*Id.*). The purpose of the Trails Act is to "preserve the right-of-way for future use, and, in the interim, convert the corridor into a recreational trail[;]" a railroad acting in accordance with the Act's stated purpose does not preclude the Court from finding a taking occurred. *Dimarino*, 178 Fed. Cl. 733, 735(2025) (quoting *Chicago Coating Co. LLC v. United States*, 892 F.3d 1164, 1167 (Fed. Cir. 2018) (internal citation omitted)).[6] It is hardly surprising that MNR—having volunteered to assume financial and legal responsibility for the proposed trail—would take steps to ensure that its pre-existing trail remained serviceable. Moreover, had a trail-use agreement already been executed and a trail constructed pursuant to that agreement, MNR's actions would be entirely consistent with, if not expected of, a trail sponsor. In any event, maintenance of the Maybrook Trail is fundamentally distinct from the continued maintenance of the rail line itself, and the former provides no basis for concluding that the Railroad would not have abandoned the line.

The Court also finds United States' comparison of the present case to *Loveridge* lacking. In *Loveridge*, the Port of Tillamook Bay Railroad ("POTB") entered a third-party contract to operate a scenic train known as the "Oregon Coast Scenic Railroad" ("OCSR") prior to the issuance of the NITU. *Loveridge*, 174 Fed. Cl. at 388. OCSR did not conduct freight services, but instead was established to educate the public about the railroad's logging history. *Id*. Because the language of POTB's easements were broad, the decision to enter a third-party contract with OCSR would most likely not have exceeded the scope of their easement. *See id.* at 390 (citing *Loveridge v. United States*, 150 Fed. Cl. 143, 150 (2020)).[7] However, this issue was never properly before the Court.

To be clear, *Loveridge* was concerned with the possibility that the railroad's third-party agreement with OCSR was a use contemplated by the broad scope of the subject easement.

---

[6] The United States also argues that there can be no causation because "MNR has not elected to consummate abandonment of [the rail] line." (Def.'s Mot. at 24). But this argument fails for the same reasons, namely MNR has not consummated abandonment because it continues to pursue a trail-use agreement, but this is an expected part of the railbanking process and does not resolve the question of whether a taking occurred. *See Galt Auto.*, 179 Fed. Cl. at 145.

[7] Interestingly, during the liability phase of the litigation, neither party disclosed OCSR's existence which resulted in a finding by Judge Firestone that a taking had occurred. *Loveridge*, at 389. During a subsequent site visit to the rail line, the Court was surprised to find the scenic train operating on the subject rail line. *Loveridge*, 174 Fed. Cl. at 389. The existence of the scenic train, previously unknown during the liability stage, raised questions about whether a taking had, in fact, occurred. *Id.* at 390. The Court expressed significant concern that this information had not been expressly presented during the liability phase and noted that the scenic train "may have altered the liability outcome." *Id.* at 390.

*Loveridge*, 174 Fed. Cl. at 390 ("[T]he scenic rail was in operation on the same rail corridor prior to and after the issuance of the NITU . . . I certainly think it impacts the decision of whether there was a taking to begin with."). This is not the same scenario, and the United States' arguments fail to comport with the Court's analysis in *Loveridge*. Here, the United States is not arguing that the Maybrook Trail is a use contemplated by the underlying easement, rather it asserts that the mere existence of the trail prevents Plaintiffs from establishing causation because their land would remain encumbered. (Def.'s Mot. at 19–20). Again, the government's position elevates the effects of "real-world conditions" over the express terms of the railroad's deed. Under this reasoning, a railroad could hypothetically construct a trail despite deed language limiting its interest to railroad purposes, and later, when seeking to abandon the line, argue that the plaintiffs cannot establish causation because their property would remain encumbered even in the absence of the NITU. The *Loveridge* decision made no such finding, and the United States has not cited any case supporting this approach. Adopting it would create a loophole that would allow the United States to avoid paying just compensation after depriving property owners of the reversionary interests to which they are entitled. Having clarified the proper analysis set forth by the Circuit, the Court proceeds to determine whether the Plaintiffs have established causation.

First, MNR filed an abandonment application with the STB, reflecting its intent to abandon the rail corridor. (Pls.' Mot., Ex. 2). It is clear from the filings that MNR is filling the shoes of the trail operator. MNR acknowledges that use of the line "is subject to MNR, as owner and sponsor of the proposed trail," and that it is assuming responsibility for any financial and legal liability that may arise. (Pls.' Mot., Ex. 2 at 4). MNR also acknowledged that the right-of-way would be subject to potential reactivation of the rail line. (*Id.* at 5). MNR's application was accepted, which led to the STB's issuance of a NITU. (Pls.' Mot., Ex. 3). Upon approving MNR's Abandonment Application, the STB specifically noted that "MNR is both the owner of the Line and the trail sponsor, [therefore] the negotiations that normally take place to reach a trail use agreement as contemplated under 49 C.F.R. § 1152.29 may not be needed." (*Id.* at 2).

Second, MNR has on several occasions stated its intent to abandon the line to pursue recreational trail use to the STB. (*See* Pls.' Ex. 22 at 4 ("This Verified Notice concerns MNR's planned abandonment of the [rail line]"), 5 ("MNR intends to consummate the proposed abandonment[.]"), and 6 ("MNR is seeking abandonment of the Line")).[8] In the absence of convincing evidence to the contrary, these statements strongly indicate MNR's intent to abandon the rail line. *See Galt Auto.,* 179 Fed. Cl. at 145 ("MNR's self-expression of its intent to abandon, and the United States failure to rebut the presumption of abandonment, left no doubt that a taking had in fact occurred.") (citing *DiMarino*, 178 Fed. Cl. at 735).

To rebut this presumption, the United States submits a declaration from Susan Sarch, former Vice President and General Counsel for MNR, in which she states:

> MNR uses the existing rail yard near Hopewell Junction and portions of the Beacon Line property for storage of equipment and materials used in MNR's provision of commuter rail service on its active rail lines; however, MNR

---

[8] Citations to page numbers are those assigned by CM/ECF.

does not use the Beacon Line for any other purposes except for fiber optic communication (there is a fiber optic cable spanning the entire Beacon Line).

(Decl. of Susan Sarch, at ¶ 20, ECF No. 45-4). There also does not seem to be any evidence that MNR has removed any tracks, even from along the areas alongside the Maybrook Trail. (Def.'s Mot. at 25). Even so, while MNR has sought and obtained a one-year extension of the NITU, the United States acknowledges that service on the rail line has been discontinued for some time now. (Def.'s Mot. at 24 ("[T[here is no dispute that service on the Beacon Line has only been discontinued[.]")).

The Court finds that the United States has not presented evidence "affirmatively indicating the railroad would have delayed abandonment . . . had there been no NITU[.]" *Sauer West*, 151 F.4th at 1346. MNR's fiber optic cable and use of one rail yard are insufficient to find in favor of the United States. Plaintiffs, however, have demonstrated that MNR would have abandoned the rail line absent the NITU. Again, MNR's statements and reaffirmation support this finding. (*See* Pls.' Ex. 22). Therefore, the Court **DENIES** the United States' Motion as to causation. Additionally, while the United States moved for summary judgment as to causation specifically as to Group D Plaintiffs, the Court's finding is also applicable to any Plaintiffs outside of this Group who have successfully demonstrated an interest in the rail corridor. Therefore, the Court **GRANTS** partial summary judgment, as to causation, for any Plaintiff who has demonstrated a property interest as discussed earlier in this decision.

## ii.   Just Compensation

Next, the United States argues that the Plaintiffs cannot meet their burden of proof as to just compensation because their expert reports failed to account for the Maybrook Trail. (Def.'s Mot. at 20–22). According to the United States, Plaintiffs' expert ("Mr. Nordine") was expressly instructed by legal counsel "*not* to consider [the Maybrook Trail] in the 'Before' scenario of his appraisal reports." (*Id.* at 21 (emphasis in original)). Therefore, the United States claims that Mr. Nordine's reports fail to provide an opinion of market value that incorporates the Maybrook Trail but instead are based on a "counter-factual Hypothetical Condition" that the land within the corridor is unencumbered. (*Id.* at 22).

Where a taking has been established, property owners bear "the burden of proving an actual loss has occurred" to determine just compensation. *Otay Mesa Prop., L.P. v. United States*, 779 F.3d 1315, 1323 (Fed. Cir. 2015). Landowners bear the burden of establishing a railroad corridor's value, which is a factual inquiry. *Memmer v. United States*, 150 Fed. Cl. 706, 753–54 (2024). Landowners bear the burden of establishing the value of the railway corridor. *Hyatt v. United States*, 170 Fed. Cl. 417, 432 (2024) (internal citations omitted). Property owners meet this burden if they show actual damages "with reasonable certainty." *Ind. Mich. Power Co. v. United States*, 422 F.3d 1369, 1373 (Fed. Cir. 2005). This "requires more than a guess, but less than absolute exactness." *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 833 (Fed. Cir. 2010).

The Federal Circuit has recognized that traditional compensation methods are not exclusive, and that alternative valuation approaches may be appropriate in cases involving the taking of an easement. *See Vaizburd v. United States*, 384 F.3d 1278, 1285–87 (Fed. Cir. 2004);

*see also Yaist v. United States*, 17 Cl. Ct. 246, 257 (1989) ("[t]he court may use its judgment in selecting the method to determine fair market value."). In ruling on disputes over valuation standards in takings cases, the Court is cognizant of the guiding principle that "just compensation should be carefully tailored to the circumstances of each particular case." *Otay Mesa*, 670 F.3d at 1368. The Court seeks "the full monetary equivalent" of the property interest taken to ensure that property owners receive just compensation under the Fifth Amendment. *Almota Farmers Elevator & Whse. Co. v. United States*, 409 U.S. 470, 473–74 (1973).

In rails-to-trails cases, the Court uses the "before and after" method of assessing damages where just compensation equals the difference in market value of the land before and after the easement is imposed. *Otay Mesa*, 670 F.3d at 1364. Although "the 'conventional' method" of valuing an easement "is the 'before-and-after' method, i.e., 'the difference between the value of the property before and after the Government's easement was imposed[,]' . . . there may be appropriate alternative valuation methods for the taking of an easement." *Id.* (internal quotes omitted); *see Balagna v. United States*, 138 Fed. Cl. 398, 404 (2018).

The Court may exclude legal restrictions in calculating the "before and after" condition of properties. In *Moore v. United States*, the Court held that "fair market value of the entire affected parcel [is determined] as if the easement did not exist and then another determination in light of the taking." 54 Fed. Cl. 747, 749 (2002). The next year, this Court went on to explain that the "before and after" calculation requires "a determination of the fair market value of the entire affected parcel as if the easement did not exist and then another determination in light of the taking." *Illig v. United States*, 58 Fed. Cl. 619, 624 (2003) (citing *Moore*, 54 Fed. Cl. at 749)). In 2011, the Court held:

> [T]he extent of the taking depends not on plaintiffs' property interests at the time of the NITU, but rather "upon the nature of the state-created property interest that petitioners would have enjoyed absent the federal action and upon the extent that the federal action burdened that interest." This view is consistent with well-settled Federal Circuit precedent that "[t]he taking, if any, when a railroad right-of-way is converted to interim trail use under the Trails Act occurs when state law reversionary property interests that would otherwise vest in the adjacent landowners are blocked from so vesting." Because the easement would have reverted back to plaintiffs under state law, the fee simple value of plaintiffs' properties is the appropriate starting point in a damages analysis for just compensation; the appropriate measure of damages is the difference between the value of plaintiffs' land unencumbered by a railroad easement and the value of plaintiffs' land encumbered by a perpetual trail use easement subject to possible reactivation as a railroad.

*Raulerson v. United States*, 99 Fed. Cl. 9, 12 (2011) (internal citations omitted).

Regardless of how value is calculated, it must account for the physical condition of the property at the time of the taking. *See Rasmuson v. United States*, 807 F.3d 1343, 1345–46 (Fed. Cir. 2015) ("[T]he fair market value of the land includes the physical remnants of the railway that would have remained on the landowners' property but for the issuance of the NITUs[;]" "[A] 'before' calculation that does not account for the costs of removing the physical remnants

of the railway will result in an artificially inflated value and yield a windfall to the landowner."). In *Rasmuson*, the parties disagreed whether the "before" condition should include the remnants of the railroad's use, including earthen embankments, ties, and poor soil conditions. *Id.* The Federal Circuit found that the "before" condition "has to account for [the] physical conditions," of the land when "[a]bsent the NITUs, the land would have returned to the landowners," with those physical conditions. *Id.* at 1346. *Rasmuson* and analogous decisions make clear that the "before" condition distinguishes between land free of legal encumbrances and land free of the tangible, physical traces left by a railway. *See id.* The relevant real-world context for the "before" condition is the property's actual physical state, unburdened by the easement created by the NITU.

Plaintiffs argue that the Maybrook Trail does not impact the just compensation and simply cites to several cases generally holding that the "[b]efore condition is considered unencumbered with any railroad purpose easement." (Pls.' Reply at 22–23 (citing multiple cases)). However, because of the preceding analysis, Plaintiffs' statement is oversimplified.[9]

Upon review of the entire record, the Court finds that overlooking the Maybrook Trail would obscure the fact that the trail does, in fact, exist. A fundamental principle of just compensation is that the public must not pay property owners more than the value of what they have actually lost. *Bauman v. Ross*, 167 U.S. 548, 574 (1897) (explaining that an owner "is entitled to receive the value of what he has been deprived of," and that awarding more "would be unjust to the public"). In this case, the Maybrook Trail was constructed before the NITU, remains in active public use, and would continue to exist under any conceivable scenario unless the property reverted to Plaintiffs and they undertook steps to remove it. The Court therefore concludes that excluding the Maybrook Trail from the "before" condition may artificially inflate the properties' value and compensate Plaintiffs for more than what was taken. *United States v. Va. Elec. & Power Co.*, 365 U.S. 624, 633 (1961); *Almota Farmers Elevator & Warehouse Co.*, 409 U.S. at 473–74 ("The owner is to be put in the same position monetarily as he would have occupied if his property had not been taken."). Nevertheless, this factor does not resolve the question of just compensation, since it may have no bearing on the outcome.

While the Court concurs with the United States that ignoring a trail would create a hypothetical construct that may inflate Plaintiffs' potential recovery, this is not a certainty. This argument fails to account for Plaintiffs' right to repair the harm inflicted by the Maybrook Trail, a right extinguished by the taking. The before-condition in valuation seeks to establish the property's worth absent the burden of a railroad easement. *See Raulerson*, 99 Fed. Cl. at 12. Even if the trail itself remained, there is no reasonable basis to assume the public would continue

---

[9] The United States cannot be held accountable for MNR's conduct preceding issuance of the NITU. Any harms resulting from third-party actions in this case cannot be imputed to the United States. *See Rancho Vista Del Mar v. United States*, 169 Fed. Cl. 299, 306 (2024). Even if MNR's construction of a trail exceeded the scope of its easement, that issue lies outside the matters properly before the Court.

to use it, as public use depends on factors other than the mere presence of a path. This is materially different from the situation in *Loveridge*, where the scenic train continued to operate over the easement even after issuance of the NITU. *Loveridge*, 174 Fed. Cl. at 388. That ongoing rail activity created a real-world condition that prospective purchasers would reasonably factor into valuation. In this case, the "before" condition is most accurately characterized as a trail corridor in which the physical trail remains, but pedestrian traffic is absent, because the reversionary interest would have extinguished the trail use altogether.

Accordingly, Plaintiffs must instruct their expert to consider the Maybrook Trail in its "before condition" to calculate just compensation. The Court notes that, given the findings above, inclusion of the Maybrook Trail may have little to no effect on the damages to which Plaintiffs may be entitled. Given that fact and expert discovery have already closed in this matter, the Court finds that additional time is warranted for Plaintiffs to evaluate property values inclusive of the preexisting Maybrook Trail. Accordingly, the Court will grant an additional thirty-five (35) days to complete expert discovery.

### III.    Conclusion

The Court **GRANTS-IN-PART** and **DENIES-IN-PART** Plaintiffs' Motion for Partial Summary Judgment as to liability, (ECF No. 43), and **GRANTS-IN-PART** and **DENIES-IN-PART** the United States' Cross-Motion, (ECF No. 45). The Court also extends expert discovery, which is now set to close on **February 27, 2026**.

Finally, the Parties **SHALL** also file a Joint Status Report by **February 27, 2026**, setting forth a proposed pretrial schedule and trial date.

**IT IS SO ORDERED.**



s/   David A. Tapp
DAVID A. TAPP, Judge